STATE of Iowa, Appellee,

v.

**Yohan WEBB, Appellant.**

No. 93–441.

Supreme Court of Iowa.

May 25, 1994.

Roxy M. Schumann, Davenport, for appellant.

Bonnie J. Campbell, Atty. Gen., Chris Odell, Asst. Atty. Gen., William E. Davis, County Atty., and Gerda C. Lane, Asst. County Atty., for appellee.

Considered by HARRIS, P.J., and LAVORATO, NEUMAN, ANDREASEN, and TERNUS, JJ.

ANDREASEN, Justice.

This appeal arises from a judgment and sentence entered upon defendant's conviction of delivery of a controlled substance following a jury trial. Defendant raises several issues relating to the execution of the arrest warrant, effective assistance of counsel, and the jury instructions. For reasons that follow, we affirm.

I. *Background and Proceedings.*

On May 14, 1992, several undercover police officers working with the Quad City Metropolitan Enforcement Group set up surveillance in a well-known high narcotics trafficking area in Davenport, Iowa, while other officers were poised to purchase illegal drugs from street dealers. That afternoon officers Dan Roach and Gregory Trudell provided surveillance of the area from their vehicle. Before officers Jeffrey Patterson and Fred Jones entered the area on foot, Roach contacted them by radio and told them to target a certain black male with braided hair who was wearing a dark coat with a red stripe. Within a short period both Patterson and Jones had purchased crack cocaine from two individuals on the street. Upon returning to their vehicle Patterson radioed Roach to confirm the deals and to give descriptions of the individuals.

Approximately twenty minutes later Roach and Trudell stopped the man they had targeted a few blocks away. They told him they were investigating a robbery and asked him for identification. The suspect complied and was identified as Yohan Webb, the defendant in this case. Webb told the officers that he was from Chicago and was visiting a girlfriend in the area. Roach then told Webb he did not match the description after all and he was free to go.

Following the filing of a criminal complaint on June 26, a warrant was issued for Webb's arrest. On July 3, Roach saw Webb riding a bicycle in a Davenport park and alerted the police. Webb was arrested and later charged by trial information with delivery of

a controlled substance, crack cocaine, in violation of Iowa Code section 204.401(1)(c) (1991) (now codified at section 124.401(1)(c) (1993)).

Webb entered a plea of not guilty and waived his right to speedy trial. Iowa R.Crim.P. 27(2)(b). His first appointed attorney withdrew in mid-July. The court then appointed attorney Robert Phelps to represent Webb. In September Webb filed a motion to quash the arrest based on noncompliance with statutory arrest procedures. *See* Iowa Code §§ 804.14, 804.21. After a hearing on the matter, the district court denied Webb's motion. Webb also filed a notice of the defense of alibi.

Trial commenced on October 26. Following an afternoon recess, Webb stood up and began to make a statement to the jury about certain things he felt his attorney had omitted. When Judge James Kelley entered the courtroom he immediately sent the jury from the room. Webb refused to sit down, spit on Phelps, told the court he would have to be found in contempt, and began striking Phelps. At this time Phelps requested a mistrial. The court directed the deputy to mace Webb and he was then removed from the courtroom. When the jury returned the court declared a mistrial based on the defendant's conduct and ordered a hearing the next morning on the issue of contempt.

At the contempt hearing Webb became verbally abusive and vulgar. He was found in contempt of court and sentenced to six months in the county jail. Phelps was allowed to withdraw and the court appointed attorney Kent Simmons to represent Webb. The court set trial for January 25, 1993.

Webb wrote a letter to the court on January 14 which expressed his dissatisfaction with Simmons and requested a hearing on the matter. Simmons filed a motion to withdraw the same day. In a memorandum supporting his motion Simmons urged that Webb be granted the right to represent himself at trial provided he fully understood the procedures and rules involved.

On January 21 the court held a hearing on the motion to withdraw. Webb explained that he was dissatisfied with Simmons because Simmons had written just one letter to him and had visited him only once. Webb also wanted to file an interlocutory appeal, to depose a State witness regarding lab test results, and to receive a copy of a deposition of a special agent. Webb believed his counsel "was prejudiced in stereotype ideas of [him]." Webb clearly stated that he did not wish to represent himself because he had insufficient knowledge and training. He asked the court to appoint attorney Roxy Schumann.

After listening to the statements made by Simmons and Webb, the court began to question Webb about his attempt to speak to the jury during the October trial. In response to the court's inquiry as to whether he would make that speech again if he didn't agree with his attorney, Webb stated that he could not predict the future. The court then denied Simmons' motion to withdraw and ordered trial to begin as scheduled, that "the Defendant shall not be present at this trial, but shall be held in the holding cell next to the courtroom ...," and that Simmons would confer with Webb at regular intervals.

Webb's second trial began on January 25. Webb refused to see Simmons the first morning. Webb was taken to the holding room in the courthouse but was soon returned to the jail because he became very disruptive and noisy. Prior to voir dire the court proposed a jury instruction to explain defendant's absence from the courtroom. The court overruled Simmons' objection to the wording of the instruction. The court read the instruction to prospective jurors and repeated it after the jury was sworn in and again at the end of the trial.

The critical issue at trial was whether the officers had correctly identified Webb as the person who sold crack cocaine to Patterson. Webb relied on two alibi witnesses. The attorneys agreed that Webb would not be present in the courtroom for witness identification. The witnesses were permitted to identify Webb based on prior court proceedings.

Simmons met with Webb before trial the next morning and updated him on the proceedings. After the State completed its case the defense unsuccessfully moved for a di-

rected judgment of acquittal. During the noon recess Simmons met with Webb again. He later stated on the record that Webb had decided not to testify but had requested a jury instruction explaining his right to not testify. This request was granted.

At the afternoon hearing on jury instructions Simmons again objected to the instruction on the defendant's absence and he also proposed modifications on two of the court's instructions. The court overruled his objections to the instructions and denied a renewed motion for a directed verdict. The jury began deliberations that afternoon and found Webb guilty as charged.

Subsequently, Webb filed a motion for arrest of judgment and a new trial. The court denied the motion at a sentencing hearing on February 11. At this hearing Webb told the court that he felt his constitutional rights had been violated because he was denied the attorney of his choice, mistreated by the court, and excluded from his trial. Simmons was permitted to withdraw from Webb's case. The court proceeded with sentencing and appointed Roxy Schumann to represent Webb on appeal.

On appeal Webb claims that (1) the district court erred in denying his motion to quash his illegal arrest; (2) his trial counsel was ineffective in failing to object to unduly suggestive identification procedures and in failing to protect his right to be present at trial; and (3) the jury instructions denied him a fair trial. We will provide further details regarding the facts and proceedings in the course of our analysis of the legal issues presented.

II.  *Manner of Arrest.*

Webb first challenges the legality of his arrest on statutory and constitutional grounds. His motion to quash arrest claimed that the police failed to comply with the statutory procedures relating to the manner of making an arrest. *See* Iowa Code §§ 804.14, 804.21(1). Our review of the statutory challenge is for correction of errors at law. Iowa R.App.P. 4.

■  Webb contends that the officers making the arrest did not show him an arrest warrant and that he was not read the warrant in violation of Iowa Code section 804.14. At the hearing on pending motions it was stipulated that officers Wehrheim and Kindred arrested Webb on the street, took him to the station where officer Bauer read the warrant, and that someone else processed and delivered him to the jail. Webb denied the warrant was read to him.

Iowa Code section 804.14 provides in part that

[t]he person making the arrest must inform the person to be arrested of the intention to arrest the person, the reason for arrest, and that the person making the arrest is a peace officer ...; if acting under the authority of a warrant, the law enforcement officer need not have the warrant in the officer's possession at the time of arrest, but upon request the officer shall show the warrant to the person being arrested as soon as possible. If the officer does not have the warrant in the officer's possession at the time of the arrest, the officer shall inform the person being arrested of the fact that a warrant has been issued.

Under the statute it is clearly permissible to show the warrant to the person being arrested at a later time. There is no evidence in the record that Webb asked to see the warrant at the time he was taken into custody. We find there was substantial compliance with the statutory requirements. *See State v. Yates,* 243 N.W.2d 645, 648–49 (Iowa 1976).

■  Webb also contends that under the statute the same officer who arrested him was required to return the warrant and to take him before the magistrate. *See* Iowa Code § 804.21(1). We reject this contention as well. Iowa Code section 804.21(1) provides in part that

[a] person arrested in obedience to a warrant shall be taken without unnecessary delay before the nearest or most accessible magistrate. The officer shall at the same time deliver to the magistrate the warrant with the officer's return endorsed on it and subscribed by the officer with the officer's official title.

The requirement of a prompt initial appearance before a judicial officer is to safeguard an arrested person's due process rights. *State v. Dowell,* 297 N.W.2d 93, 96 (Iowa 1980). Webb makes no claim of prejudice or undue delay. *See Fryer v. State,* 325 N.W.2d 400, 409 (Iowa 1982); *Dowell,* 297 N.W.2d at 97.

Webb's constitutional challenge to his arrest was not raised in district court. We may not consider an issue that is raised for the first time on appeal, "even if it is of constitutional dimension." *Patchette v. State,* 374 N.W.2d 397, 401 (Iowa 1985). We hold the motion to quash arrest was properly denied.

### III. *Ineffective Assistance of Counsel.*

Webb raises several grounds as a basis for violation of his Sixth Amendment right to effective counsel. U.S. Const. amend. VI; *see also* Iowa Const. art. I, § 10. Although we usually preserve ineffective assistance of counsel claims for postconviction relief proceedings, we will review "such claims on direct appeal where the evidence available is sufficient to establish the validity of the claim." *State v. Bumpus,* 459 N.W.2d 619, 627 (Iowa 1990); *accord State v. McKettrick,* 480 N.W.2d 52, 56 (Iowa 1992). Because Webb raises a constitutional violation, we make an evaluation of counsel's overall representation. "This is equivalent to a de novo review." *Morgan v. State,* 469 N.W.2d 419, 426 (Iowa 1991).

> The Supreme Court has held that the Sixth Amendment right to counsel exists, and is needed, in order to protect the fundamental right to a fair trial. The Constitution guarantees a fair trial through the Due Process Clauses, but it defines the basic elements of a fair trial largely through the several provisions of the Sixth Amendment including the Counsel Clause.

*Strickland v. Washington,* 466 U.S. 668, 684–85, 104 S.Ct. 2052, 2063, 80 L.Ed.2d 674, 691 (1984). We consider "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686, 104 S.Ct. at 2064, 80 L.Ed.2d at 692–93.

In order for Webb to establish his claim of ineffective assistance of trial counsel, he must show: "(1) that counsel's performance fell outside a normal range of competency; and (2) that the deficient performance so prejudiced [him] as to give rise to a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different." *McKettrick,* 480 N.W.2d at 55. Counsel is presumed competent and the burden is on Webb to prove otherwise by a preponderance of the evidence. *Id.*

With these familiar principles in mind we turn to Webb's specific claims.

### A. Substitute Counsel.

Webb makes a general claim that the court violated his right to counsel by denying attorney Simmons' motion to withdraw and his request for substitute counsel before the second trial. We disagree.

We have stated that a defendant must demonstrate sufficient cause to warrant the appointment of substitute counsel. *State v. Hutchison,* 341 N.W.2d 33, 41 (Iowa 1983). Such justifiable dissatisfaction with appointed counsel includes "a conflict of interest, an irreconcilable conflict, or a complete breakdown in communication between the attorney and the defendant." *Smith v. Lockhart,* 923 F.2d 1314, 1320 (8th Cir.1991). Further, the court must balance "the defendant's right to counsel of his choice and the public's interest in the prompt and efficient administration of justice." *United States v. Swinney,* 970 F.2d 494, 499 (8th Cir.1992) (citation omitted).

Notably, Simmons was Webb's third appointed attorney. The hearing on the motion to withdraw was held four days before the second trial. Providing substitute counsel at this point would have disrupted the judicial process once again. *See, e.g., Swinney,* 970 F.2d at 498–99. "Thus, last-minute requests to substitute counsel must not be allowed to become a tactic for delay." *Id.* at 499. We conclude the court did not abuse its discretion in denying Webb's request for new counsel.

## B. Identification Procedure.

Webb argues that his counsel was ineffective for failing to move to suppress unduly suggestive pretrial identification procedures. Specifically, Webb claims that the in-court identification testimony was tainted by a prior out-of-court identification using a single photograph. *See State v. Neal*, 353 N.W.2d 83, 89 (Iowa 1984).

The facts as to the identification are these. Officer Roach testified at trial that on the afternoon of May 14, 1992, he noticed what appeared to be drug transactions taking place in a group of people on the street. He then directed officer Patterson by radio to target a black male who wore his hair braided and was wearing a dark-colored coat with a red stripe. While driving through the area Roach observed the suspect walk over and begin talking to officers Patterson and Jones. Neither Roach nor his partner Trudell viewed the actual drug transaction. Approximately twenty minutes after the sale to Patterson, Roach stopped the same person he had noticed earlier and asked him for identification. Roach saw Webb again in a park on July 3 just before he was arrested.

Patterson corroborated Roach's testimony concerning the targeted suspect. Officer Jones was with Patterson when the suspect walked over, but Jones walked away to make a drug buy from another individual. The suspect sold Patterson one rock of crack cocaine for twenty dollars. Patterson testified that he got a good look at the suspect because it was a sunny afternoon, they were only a couple feet apart, and they negotiated the sale for several minutes. Back in his vehicle Patterson radioed Roach to confirm the deal and to give him a description of the suspect. Both Patterson and Roach testified that Patterson described the suspect as "the same person that he had pointed out to me." Patterson was not present when Roach stopped and identified the targeted man as Webb. He next saw Webb at the time he was deposed.

Prior to his in-court identification of Webb, Patterson obtained a single mug shot of Webb for inclusion in his investigative file. It is this photograph, Webb asserts, which was used for the purpose of obtaining an illegal out-of-court identification. Webb's theory of defense was based on misidentification and alibi. Cross-examination of the officers focused on the differences between their oral testimony and their written reports. Neither Patterson nor Jones included a description of the suspect in their written reports. In his report, Roach noted that he saw "a male black subject who was wearing a blue coat with a red horizontal line in the middle of it." Two other officers did not specifically recall whether Roach had provided Patterson with a description of the suspect over the radio prior to entering the area. Based on these alleged inconsistencies Webb argues that the in-court identification testimony was tainted by the likelihood that the officers would remember the photograph and substitute that image rather than the image of the person who actually sold the cocaine nearly two months earlier.

■ In considering an undue suggestiveness claim, we employ a two-part analysis. First, we must decide whether the identification procedure was in fact impermissibly suggestive. Second, if we find that the procedure was impermissibly suggestive, then we must determine whether, under the totality of the circumstances, an identification adhered by the witness at the time of trial is irreparably tainted.

*State v. Birch*, 479 N.W.2d 284, 286 (Iowa 1991) (citation omitted); *accord State v. Rawlings*, 402 N.W.2d 406, 407 (Iowa 1987); *Neal*, 353 N.W.2d at 86–87. Assuming, without deciding, that viewing of the mug shot was an impermissibly suggestive identification procedure, Webb must still show that the photograph gave rise to "a very substantial likelihood of irreparable misidentification." *Rawlings*, 402 N.W.2d at 408. "Short of this, the identification evidence and its shortcomings or credibility are for the jury to weigh." *Neal*, 353 N.W.2d at 87.

We have stated that even where a pretrial identification is obtained by an illegal procedure, "the same witness may nevertheless identify a defendant at trial if such identification has an independent origin...." *State v. Ash*, 244 N.W.2d 812, 814 (Iowa 1976); *accord State v. Sanders*, 312 N.W.2d 534, 540

(Iowa 1981); *State v. Canada*, 212 N.W.2d 430, 432–33 (Iowa 1973). Due process is not violated "so long as the identification possesses sufficient aspects of reliability." *Manson v. Brathwaite*, 432 U.S. 98, 106, 97 S.Ct. 2243, 2249, 53 L.Ed.2d 140, 149 (1977).

The present case is factually dissimilar from most cases where a single photograph or a photo array is shown to a victim of a crime. *See, e.g., State v. Mark*, 286 N.W.2d 396 (Iowa 1980). Here the identification testimony was made by undercover police officers actually involved in the illegal transaction. This case is, therefore, more similar to *Manson*, 432 U.S. at 100–01, 97 S.Ct. at 2245–46, 53 L.Ed.2d at 145–46 (undercover officer who purchased narcotics viewed a photograph of the suspect in his office before making an in-court identification); *see also Ash*, 244 N.W.2d at 814 (police officer first identified defendant from a mug shot at the station).

In *Manson*, the Supreme Court held that relevant factors for evaluating the reliability of identification testimony include

> the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation.

432 U.S. at 114, 97 S.Ct. at 2253, 53 L.Ed.2d at 154. Applying these factors, we conclude the mug shot did not irreparably taint the in-court identification of Webb.

Like the officer in *Manson*, these officers were trained and experienced narcotics agents who were on duty. *See Manson*, 432 U.S. at 115–16, 97 S.Ct. at 2253, 53 L.Ed.2d at 154–55. The officers' descriptions were consistent. Each of them testified unequivocally that his identification of Webb was independent of the photograph. *See, e.g., Ash*, 244 N.W.2d at 814–15; *Canada*, 212 N.W.2d at 432–33. Moreover, the officers were vigorously cross-examined. *See Ash*, 244 N.W.2d at 815 ("The danger that use of the technique [of photographic identification] may result in convictions based on misidentification may be substantially lessened by a course of cross-examination at trial which exposes to the jury the method's potential for error.") (citation omitted).

We hold that the trustworthiness of the in-court identification was properly submitted to the jury for consideration. Counsel did not breach an essential duty by failing to move to suppress the identification testimony; accordingly Webb's claim of ineffective assistance on this ground must fail.

### C. Exclusion of Defendant.

■ Webb argues he was denied effective assistance of counsel because his attorney did not object to the court's failure to allow him to be present at every stage of the trial and did not permit him to reclaim his right during trial. "One of the most basic of the rights guaranteed by the Confrontation Clause is the accused's right to be present in the courtroom at every stage of his trial." *Illinois v. Allen*, 397 U.S. 337, 338, 90 S.Ct. 1057, 1058, 25 L.Ed.2d 353, 356 (1970); *see also* U.S. Const. amend. VI; *State v. Meyers*, 426 N.W.2d 614, 616 (Iowa 1988); Iowa R.Crim.P. 25(1). However, this right is not absolute; it "may be lost by consent or at times even by misconduct." *Allen*, 397 U.S. at 342–43, 90 S.Ct. at 1060, 25 L.Ed.2d at 358; *see also State v. Moore*, 276 N.W.2d 437, 440–41 (Iowa 1979); *State v. Blackwell*, 238 N.W.2d 131, 135 (Iowa 1976); Iowa R.Crim.P. 25(2).

We have recognized that an obstreperous defendant creates a tension between the right to be present in the courtroom and the need to complete a trial in a dignified, orderly, and safe manner. *State v. Edwards*, 507 N.W.2d 393, 399 (Iowa 1993). Whether to employ any alternatives of Iowa Rule of Criminal Procedure 25(4) is a judgment call depending on the circumstances of each case. *Id.* The out-of-court conduct of a defendant is relevant when considering whether removal or exclusion of a defendant is justified. *Moore*, 276 N.W.2d at 440–41.

■ Although we may presume prejudice when a defendant is not present at trial, the presumption may be rebutted. *State v. Wise*, 472 N.W.2d 278, 279 (Iowa 1991). This is not an "exceptional case" where we would apply a *per se* rule of prejudice. *See Strick-*

*land,* 466 U.S. at 692–93, 104 S.Ct. at 2067, 80 L.Ed.2d at 696–97.

■ We believe the present record is inadequate to determine whether counsel failed to perform an essential duty with regard to Webb's exclusion from trial or whether prejudice resulted from Webb's absence. Relief on this claim, if any, may only be determined on an application for postconviction relief.

### IV. *Jury Instructions.*

■ Webb's final assignment of error relates to the court's ruling with respect to three jury instructions. We will not disturb a trial court's ruling on instructions absent an abuse of discretion. *State v. Cunningham,* 463 N.W.2d 887, 889 (Iowa App.1990). Moreover, any "error in jury instructions must be prejudicial to warrant reversal." *State v. Boley,* 456 N.W.2d 674, 679 (Iowa 1990).

■ Webb first asserts that the admonition given to the jury explaining his absence should not have stated a reason for his removal. The instruction given by the court before and after jury selection and at the end of the trial provided:

> Because of the behavior of the defendant I have had to remove him from the courtroom and he will remain out of the courtroom until such time as he wishes to return and conduct himself properly. Measures have been taken to see that he is aware of how the trial is progressing and with these you need not be concerned.
>
> In removing the defendant I am not indicating to you as a jury or anyone else that I have an opinion as to the guilt or innocence of the defendant or that I personally have injected myself into this trial. Rather, what I have done is to maintain order so that the trial can proceed. You are not to form an opinion or belief as to the defendant's guilt or innocence by what has occurred; rather, as you were told when sworn in as a jury, the guilt or innocence must be determined by the facts, evidence and law. What has occurred in this courtroom is not a part of the case and cannot be used by you. On this you will again be instructed, but I

wanted you to know why the defendant was not present.

Although one potential juror expressed reservations about his ability to be totally impartial for a man who acted improperly and had to be removed, this juror was excused. No other prospective juror expressed such concerns. We find the court's instruction was appropriate in this case.

Finally, Webb argues that the court erred in rejecting his proposed instruction on prior inconsistent statements and in excluding paragraphs two and four of the uniform instruction on eyewitness identification. *See* 1 Iowa Crim. Jury Instructions 200.43, 200.45 (1988). Viewing the instructions as a whole, we conclude they adequately covered the applicable law and the defenses raised. *See State v. Stewart,* 445 N.W.2d 418, 422 (Iowa App.1989); *State v. Tobin,* 338 N.W.2d 879, 881 (Iowa 1983). Webb was not denied a fair trial.

### V. *Conclusion.*

We have considered all arguments presented and find no basis for overturning the defendant's conviction. We also preserve the issue raised in division III.C. for possible postconviction proceedings.

**AFFIRMED.**