James Losey appeals the district court decision denying his application for postconviction relief. He alleges he received ineffective assistance of trial counsel. Through a pro se brief, he further contends he received ineffective assistance of postconviction counsel. We affirm.
I. Background Facts and Proceedings.
In 2005, James Losey was found guilty of robbery in the second degree. He was sentenced to serve up to ten years in prison. Losey's conviction was affirmed in State v. Losey, No. 05-1745 (Iowa Ct. App. Dec. 28, 2006), and his ineffective assistance of counsel claims were preserved for possible postconviction review.[1] Losey filed a pro se application seeking postconviction relief, raising four claims of ineffective assistance of trial counsel.[2] On November 3, 2008, the court denied Losey's application on all grounds.
Losey now appeals the district court's ruling. Through his counsel's brief, Losey challenges the district court's ruling with regard to his trial counsel's ineffective assistance in failing to (1) depose additional witnesses, (2) file a timely motion to suppress evidence seized during the stop and search of his vehicle, (3) object during closing argument and request a curative instruction, (4) request a competency evaluation, and (5) raise a diminished capacity defense. Through a pro se brief, Losey alleges he received ineffective assistance of postconviction counsel.
II. Scope and Standard of Review.
We conduct a de novo review of postconviction relief proceedings concerning alleged ineffective assistance of counsel claims. See Harrington v. State, 659 N.W.2d 509, 520
(Iowa 2003); see also State v. Decker, 744 N.W.2d 346
(Iowa 2008). We give weight to the lower court's determination of witness credibility. Millam v. State,745 N.W.2d 719, 721 (Iowa 2008).
III. Ineffective Assistance of Counsel.
To establish a claim of ineffective assistance of counsel, a defendant must prove (1) counsel failed to perform an essential duty and (2) prejudice resulted to the extent it denied the defendant a fair trial. State v. Maxwell,743 N.W.2d 185, 195 (Iowa 2008). A defendant's failure to prove either element by a preponderance of the evidence is fatal to a claim of ineffective assistance. State v. Polly,657 N.W.2d 462, 465 (Iowa 2003).
The test for the first element is objective: whether counsel's performance was outside the range of normal competency.Millam, 745 N.W.2d at 721. We start with a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. DeVoss v. State,648 N.W.2d 56, 64 (Iowa 2002). We presume the attorney performed competently, and the defendant must present an affirmative factual basis establishing inadequate representation.Millam, 745 N.W.2d at 721. The test for the second element is whether the defendant can prove there is a reasonable probability that, without counsel's errors, the outcome of the proceedings would have been different. Id. at 722;Ledezma, 626 N.W.2d at 143. A reasonable probability is one that undermines confidence in the outcome. Millam,745 N.W.2d at 722.
We have reviewed the record, the briefs of the parties, and the district court's opinion. Under our de novo review, we find the district court sufficiently addressed every issue Losey now raises through his counsel's brief regarding ineffective assistance of trial counsel.[3] Any further discussion of these issues by our court would add little to our jurisprudence and not change the disposition of this case. Accordingly, we affirm on these issues.
Losey also filed a pro se brief that raises a claim with regard to his postconviction counsel's alleged ineffectiveness. He argues his postconviction counsel was ineffective in failing to raise a claim that the in-court identifications of Losey by several witnesses were derived from unnecessarily suggestive procedures, and that the in-court identifications were not reliable.
Although counsel is not required to predict changes in the law, counsel must exercise reasonable diligence in deciding whether an issue is worth raising. State v. Dudley,766 N.W.2d 606, 620 (Iowa 2009). Because counsel has no duty to raise a meritless issue, the validity of Losey's constitutional claim must be determined. See id. Constitutional claims are reviewed de novo. State v. Bumpus, 459 N.W.2d 619, 622
(Iowa 1990). "If his constitutional challenges are meritorious, we will then consider whether reasonably competent counsel would have raised these issues and, if so, whether [Losey] was prejudiced by his counsel's failure to do so." Id.
In State v. Folkerts, 703 N.W.2d 761, 766 (Iowa 2005), our supreme court determined that a defendant is not required "to be present at the deposition of an eyewitness when it is likely an impermissibly suggestive identification would take place." Under Folkerts, a defendant is permitted to be absent from the deposition only during the questioning of the deponent relative to identification. Folkerts,703 N.W.2d at 766. Prior to the court's decision inFolkerts, however, Iowa's longstanding rule held that a defendant did not have a right to waive his or her right to confrontation so as to be absent from a deposition. Iowa R. Crim. P. 2.27(1); see State v. Randle, 603 N.W.2d 91
(Iowa 1991), overruled by Folkerts, 703 N.W.2d at 766;State v. Davis, 259 N.W.2d 812, 813-14 (Iowa 1977),overruled by Folkerts, 703 N.W.2d at 766.
As recited in Folkerts:
 In Stovall v. Denno, the United States Supreme Court condemned the practice of singly, and not as part of a lineup, showing suspects to witnesses for identification purposes. 388 U.S. 293, 302, 87 S. Ct. 1967, 1972, 18 L. Ed. 2d 1199, 1206 (1967). When unnecessarily suggestive pretrial out-of-court identification procedures conducive to mistaken identification that are incapable of repair are used, the Due Process Clause requires exclusion of the testimony of the identification. Id.
at 301-02, 87 S. Ct. at 1972-73, 18 L. Ed. 2d at 1206. The Supreme Court stated, however, that the totality of the circumstances must be examined to determine if a defendant's due process rights were violated as a result of the identification procedure.
 Id. at 302, 87 S. Ct. at 1972, 18 L. Ed. 2d at 1206.
Folkerts, 703 N.W.2d at 763. The court inFolkerts also reiterated its approval of the two-part analysis to determine whether testimony is admissible concerning the identification procedure:
 The first part of the analysis requires the court to decide whether the identification procedure was in fact impermissibly suggestive. Second, if the court finds the procedure was impermissibly suggestive, then the court must determine whether, under the totality of the circumstances, an identification made by the witness at the time of trial is irreparably tainted.
Id. at 763-64. "The critical question under the second step is whether the identification was reliable." State v.Taft, 506 N.W.2d 757, 762 (Iowa 1993). The defendant must show the identification procedure gave rise to "a very substantial likelihood of irreparable misidentification."State v. Webb, 516 N.W.2d 824, 829 (Iowa 1994). Relevant factors in determining the reliability of the identification include: (1) the witness's opportunity to view the perpetrator at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the perpetrator; (4) the level of certainty demonstrated by the witness at confrontation; and (5) the length of time between the crime and confrontation. Folkerts,703 N.W.2d at 764.
Losey contends that the in-court identification by witness Valerie Vorwald (the teller at the bank during the attempted robbery) was tainted by Vorwald's earlier identification of Losey during a pretrial deposition. Losey alleges the in-court identification was unreliable because Losey was handcuffed, shackled, and wearing orange jail clothing during the deposition. He notes that the deposition did not take place until more than three months after the robbery. Additionally, Losey contends Vorwald's identification was inconsistent, as she indicated in the police report immediately following the robbery that the suspect had no facial hair. As Losey points out, however, he did in fact have a "rather large mustache" at the time of the robbery. Thus, Losey argues that the pretrial identification was impermissibly suggestive.
We will assume, without deciding, that Vorwald's viewing Losey (handcuffed, shackled, and wearing orange jail clothing) during the identification portion of the deposition was an impermissibly suggestive procedure. See Webb,516 N.W.2d at 829; Taft, 506 N.W.2d at 762. However, Losey has not shown that the evidence introduced created a substantial likelihood of irreparable misidentification. Vorwald was working as a teller at the bank at the time Losey entered the lobby. Vorwald greeted Losey as he approached her window. Vorwald was face to face with Losey as he showed her a note, typed in capital letters, ordering her to put money in a cardboard envelope he was holding. Throughout this time, Vorwald was within several feet of Losey and she had a clear view of Losey's face. The event was traumatic and had an extreme emotional impact on Vorwald. It is the kind of event a victim may relive for years to come. Although three months passed between the time of the robbery and Vorwald's deposition, this fact is less of a concern where the crime occurred in the immediate and direct presence of the witness.
Losey further argues that the in-court identification by witness John Eigenberger (a next door neighbor to bank) was tainted by Eigenberger's earlier identification of Losey during his pretrial deposition. Losey points out that Eigenberger's deposition did not take place until more than a year after the robbery, and just several days before Eigenberger's in-court identification. He contends Eigenberger's in-court identification was suggestive because Losey was handcuffed, shackled, and wearing orange jail clothing during the deposition. Losey further contends Eigenberger's identification was not reliable, because although his statements to police immediately following the robbery contained information about Losey's vehicle and clothing, the statements contained no information about Losey's physical features. For these reasons, Losey argues that Eigenberger's pretrial identification was impermissibly suggestive.
Again, we will assume, without deciding, that Eigenberger's viewing Losey (handcuffed, shackled, and wearing orange jail clothing) during the identification portion of the deposition was an impermissibly suggestive procedure. See Webb,516 N.W.2d 824, 829; Taft, 506 N.W.2d at 762. Losey has not shown, however, that the evidence introduced created a substantial likelihood of irreparable misidentification. Eigenberger lives next door to the bank. On the afternoon of the robbery, Eigenberger was in his living room when he noticed Losey's vehicle pull up and park on the opposite side of the street directly in front of his house. When Losey exited the driver's side door, he looked around and Eigenberger saw his face. Eigenberger then watched as Losey walked up the street toward the hospital. Eigenberger was able to see Losey's face again when Losey returned to the vehicle several minutes later. Eigenberger watched as Losey opened the door, rolled up the window, and then walked diagonally across the road toward the bank. Within a few minutes, Eigenberger saw Losey return in a hurry to the vehicle, throw something in the backseat, and drive away.
Eigenberger soon noticed police arrive at the bank, and he went outside to tell them about the man he had just seen. Eigenberger's first interview with police was very brief. He indicated that the suspect was a white male in his fifties, approximately six-foot tall, with a thin build. Eigenberger also gave a description of Losey's car and clothing. Although Eigenberger's interview was short, it was conducted immediately following the robbery, and Eigenberger's description of Losey and his vehicle helped lead to Losey's arrest. Eigenberger paid close attention to Losey because Losey was oddly dressed for a hot summer day and was in a hurry when he returned to his car. Losey was directly in front of Eigenberger's house, and Eigenberger had several unobstructed views of Losey's face. The record indicates Eigenberger paid special attention to Losey the several times he saw him before and after the robbery, likely due to Losey's unusual behavior. Eigenberger expressed his certainty when he identified Losey. Although his pretrial identification of Losey occurred more than one year after the robbery, we find it to be reliable under the circumstances.[4]
Upon our review, we find the evidence of Vorwald's and Eigenberger's identifications were admissible. It was for the jury to determine the weight the evidence should be given. The trustworthiness of the eyewitnesses' identifications was properly submitted to the jury for consideration. SeeWebb, 516 N.W.2d at 829; State v. Rawlings,402 N.W.2d 406, 407-08 (Iowa 1987). Because the evidence was admissible, Losey's trial counsel did not breach an essential duty by failing to move to suppress the identification testimony. See Webb, 516 N.W.2d at 830. Any objection by Losey's trial counsel as to the admissibility of the evidence would have been meritless, and therefore, Losey cannot show that his trial counsel was ineffective. See Dudley,766 N.W.2d at 620. Upon our finding that Losey's trial counsel had no duty to object to the evidence, it follows that Losey's postconviction counsel had no duty to raise a claim based on trial counsel's failure. See id. Accordingly, we affirm.
IV. Conclusion.
We conclude Losey has not proved by a reasonable probability that, without counsels' alleged errors, the outcome of the proceedings would have been different. We therefore affirm the district court's denial of Losey's postconviction relief application.
AFFIRMED.
[1] Losey raised the following issues on direct appeal: (1) whether there was insufficient evidence to prove the intent to commit an assault element of robbery; (2) whether the district court erred in denying substitute counsel; and (3) whether his trial counsel rendered ineffective assistance in failing to object during closing argument. Through a pro se brief, Losey argued his trial counsel was ineffective in failing to file a motion to suppress, depose all witnesses, and raise a mental health defense.
[2] State filed a brief in resistance. In an evidentiary hearing on October 2, 2008, the court heard testimony from Losey and his public defender, Steven Hodge.
[3] Although the district court did not specifically analyze whether Losey's counsel erred in failing to request a competency evaluation, the court indirectly disposed of this issue in its discussion as to the issue of Losey's counsel's alleged failure to raise a diminished capacity defense. Losey did not agree to pursue a diminished capacity defense as counsel suggested, and therefore, counsel's trial strategy was focused elsewhere. Furthermore, counsel testified that his "understanding of Mr. Losey and his ability to cooperate and converse and communicate would not indicate that he was having any trouble from a competency standpoint. . . ." The evidence in the record does not support a finding that Losey was not competent to stand trial, and his counsel did not breach a duty in failing to raise that issue.
[4] Additionally, Losey's insistence that his trial attorney depose Eigenberger while Losey wore the same jail attire, handcuffs, and shackles that he did during Vorwald's deposition may constitute waiver or consent to the pretrial identification procedures.