# IN THE COURT OF APPEALS OF IOWA

No. 15-0886
Filed August 17, 2016

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**DONTRELL MARQUA NEAL,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Polk County, Richard G. Blane II, Judge.


        A defendant challenges his convictions and sentences for robbery in the first degree and possession of a firearm as a felon.  **AFFIRMED**.


        Mark C. Smith, State Appellate Defender, and Melinda J. Nye, Assistant Appellate Defender, for appellant.

        Thomas J. Miller, Attorney General, and Linda J. Hines, Assistant Attorney General, for appellee.


        Considered by Danilson, C.J., and Vaitheswaran and Tabor, JJ.  Blane, S.J., takes no part.

**TABOR, Judge.**

Dontrell Neal appeals his judgment and sentence entered upon a jury verdict finding him guilty of robbery in the first degree and felon in possession of a firearm. First, Neal argues his trial counsel was ineffective for failing to move to suppress the show-up identification as a due process violation under the Iowa Constitution. Second, Neal argues the district court abused its discretion when it imposed consecutive sentences. Because Neal has shown neither prejudice by the failure to move to suppress nor an abuse of discretion in sentencing, we affirm.

## I.    Background Facts and Proceedings

In the early morning hours of February 10, 2014, an armed man entered a Kum & Go gas station on the eastside of Des Moines. The man trained his handgun on the store clerk, Victor Moody, and demanded money from the registers. Moody complied, putting the cash inside a brown paper bag. After the man left the store, Moody immediately called the police to report the robbery, describing the perpetrator as wearing a black-hooded sweatshirt, black jeans, and a scarf over his mouth.

Des Moines Police Officer Brian Buck, who was on patrol nearby, headed toward the store. But as the officer approached, he noticed a green Yukon travelling away from Kum & Go. Although he was unable to see the driver, the vehicle caught Officer Buck's attention because of its proximity to the Kum & Go and the circuitous route it was taking to travel east. Officer Buck followed the Yukon for about four blocks before initiating a traffic stop. As Officer Buck activated his lights, the Yukon accelerated into a driveway, striking two parked

cars before coming to a stop. The driver jumped out of the vehicle and ran. Believing the driver's clothing matched the description provided by Moody, Officer Buck pursued on foot.

When Officer Buck lost sight of the driver in a residential neighborhood, he decided to wait for the arrival of reinforcements, including a K-9 unit. The officers then tracked the path of the driver through the snow and located a paper bag filled with money on the ground behind the address where Officer Buck initially gave up his foot chase. Shortly thereafter, another officer located the driver a few blocks away and identified him as Dontrell Neal. After taking Neal into custody, the officers returned to the area of the foot chase. They followed the footprints in the snow from the driveway where Neal left his Yukon to the backyard of the same residence and found a loaded handgun partially buried in the snow next to the footprints. Inside Neal's vehicle, officers found a gray stocking cap and black t-shirt.

Within approximately one-half hour of the robbery report, officers picked up Moody from the convenience store and brought him to the neighborhood where they had apprehended Neal. The officers directed their lights on the suspect and asked Moody if Neal was the person who had robbed the store. While unable to make a positive identification based on the suspect's face, Moody identified Neal as the robber based on his clothing.

On March 20, 2014, the State charged Neal with first-degree robbery, a class "B" felony, in violation of Iowa Code section 711.1(1)(a) and (b) (2013) and felon in possession of a firearm, a class "D" felony, in violation of section 724.26(1). Following trial, the jury found Neal guilty on both counts. On May 19,

2015, the sentencing hearing took place. The court imposed consecutive sentences "for maximum protection of the public due to nature of the offense and defendant's prior criminal record." The court further noted it would not impose probation on the felon-in-possession conviction because "probation would not provide maximum opportunity for rehabilitation of the defendant and protection of the public from further offenses."

That same day, Neal filed a notice of appeal. He seeks relief on two grounds: (1) trial counsel provided ineffective assistance by failing to file a motion to suppress the show-up identification, which violated his due process rights under article I, section 9 of the Iowa Constitution; and (2) the court abused its discretion in imposing consecutive terms of imprisonment.

## II. Ineffective Assistance of Counsel

We review ineffective-assistance-of-counsel claims de novo. *State v. Maxwell*, 743 N.W.2d 185, 195 (Iowa 2008). Generally, we prefer to preserve ineffective-assistance claims for postconviction-relief proceedings. But if the record is sufficient, we may resolve such claims on direct appeal. *State v. Johnson*, 784 N.W.2d 192, 198 (Iowa 2010). We find the record is sufficient in this case.

To prove his claim of ineffective assistance of counsel, Neal must show: (1) his counsel failed to perform an essential duty; and (2) this failure resulted in prejudice. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Halverson*, 857 N.W.2d 632, 635 (Iowa 2015). Neal must prove both of these elements by a preponderance of the evidence to prevail; we may affirm on appeal if either element is lacking. *See Strickland*, 466 U.S. at 687.

Neal argues his counsel failed to perform an essential duty when she did not move to exclude the pre-trial show-up identification on state due process grounds. Iowa courts have adopted the federal "reliability" standard to determine the admissibility of an out-of-court identification. *State v. Folkerts*, 703 N.W.2d 761, 763–64 (Iowa 2005); *State v. Webb*, 516 N.W.2d 824, 829–30 (Iowa 1994). Under this standard, the court must determine: (1) if the out-of-court identification procedure was impermissibly suggestive; and (2) if so, whether the procedure gave rise to "a very substantial likelihood of irreparable misidentification" under the totality of the circumstances. *Manson v. Brathwaite*, 432 U.S. 98, 116 (1977) (quoting *Simmons v. United States*, 390 U.S. 377, 384 (1968)). While conceding that Iowa courts have embraced the federal approach, Neal lobbies for a move to the "necessity" standard followed in Wisconsin in light of continuing scientific research on the reliability of eyewitness identification and the Iowa Constitution's significant protections of individual rights.[1] Under the "necessity" standard, out-of-court show-up identifications are "inherently suggestive" and inadmissible unless the show-up-identification procedure was necessary under the totality of the circumstances. *State v. Dubose*, 699 N.W.2d 582, 593–94 (Wis. 2005).

But we need not address the issue of trial counsel's failure to perform an essential duty because Neal has not shown he was prejudiced by the alleged breach.[2] To prove prejudice, Neal must demonstrate a reasonable probability

[1] The routing statement in the appellant's brief asks for our supreme court to retain this appeal because it involves a substantial issue of first impression in Iowa, but the supreme court transferred the case to us.

[2] The State directs us to *State v. Williams* to resolve this claim. No. 10-1254, 2011 WL 5394366 (Iowa Ct. App. Nov. 9, 2011). After his conviction for robbery in the first degree, Williams appealed on the grounds his trial counsel was ineffective for failing to file a motion to suppress the show-up identification used in his case. *Id.* at *1. Like

that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Halverson*, 857 N.W.2d at 639 (quoting *Strickland*, 466 U.S. at 694). In making this determination, we consider the evidence as a whole as well as the extent of the effect of counsel's purported error on the overall trial. *State v. Graves*, 668 N.W.2d 860, 882–83 (Iowa 2003).

To analyze the prejudice prong, we turn to the evidence considered by the jury in this matter. The jury had the opportunity to view the surveillance video from Kum & Go and compare the images of the robber with photographs of the clothing Neal wore that night. In addition, the surveillance video shows the robber was wearing a gray stocking cap and a dark article of clothing covering his face. The jury could have determined the items found in Neal's vehicle—a gray stocking cap and black t-shirt—matched the items shown on the surveillance video. Further, Officer Buck first observed Neal's vehicle in the general proximity of the Kum & Go only a short time after the 911 call. When Officer Buck signaled the vehicle to pull over, Neal ran. Law enforcement found a paper bag of money near the area where the officer first lost sight of Neal and also found a handgun near the area where the foot chase began. Both items were consistent with the surveillance footage and the descriptions provided by

---

Neal, Williams argued for the adoption of Wisconsin's rule regarding show-up identification procedures. *See id.* at *3. This court declined to reach the issue of whether Iowa should adopt Wisconsin's standard and instead resolved the matter on prejudice grounds. *Id.* We noted other evidence presented at trial undermined Williams's prejudice claim, such as video surveillance independently showing the robber wearing clothing matching Williams's clothing, Williams ignoring the police when ordered to stop, the discovery of a knife in the snow bank where Williams had fallen similar to the knife observed by the victim, and the discovery Williams's pockets contained an amount of change consistent with the amount the victim had reported stolen. *Id.* at *4.

Indeed, the factual similarities between these matters are numerous—particularly the evidence independent of the show-up identification demonstrating the strength of the State's case. Accordingly, we resolve Neal's claim as we resolved Williams's claim.

Moody. Compared to the strong circumstantial evidence of Neal's participation in the armed robbery, Moody's identification of Neal's *clothing* during the show-up procedure was of little consequence.

Finally, the jury heard recordings of phone conversations Neal had from the jail after his arrest. During the first call, Neal tells a woman that he had been charged with first-degree robbery and felon in possession of a firearm. When she asks if the police found him with his gun, Neal replies: "No, they didn't catch me with it." In another call, in response to a woman caller's reference to their need for money, Neal says: "They got the money too." He continues: "I tried." The woman states: "It would have been better if you would have just came home." And Neal responds: "Then we would have just been in the same situation." She continues: "No, we would have called fucking Lori and got the money or something." A reasonable jury could have determined Neal's statement, "I tried," referred to his attempt to obtain money by robbing the Kum & Go and his statement, "They didn't catch me with it," meant Neal did, in fact, have a firearm. Neal's incriminating statements following his arrest added to the overall strength of the State's case.

Given the ample evidence of Neal's guilt presented at trial, even if Neal's counsel failed to perform an essential duty by not moving to suppress the show-up identification, we find Neal failed to show prejudice sufficient to undermine our confidence in the outcome of his case. Therefore, we affirm Neal's convictions.

## III.    Consecutive Sentences

We review a district court's sentencing decision for an abuse of discretion. *State v. Hill,* 878 N.W.2d 269, 272 (Iowa 2016). The sentencing court must

"state on the record its reason for selecting the particular sentence." Iowa R. Crim. P. 2.23(3)(d). A district court abuses its discretion when it makes a sentencing decision "on grounds clearly untenable or to an extent clearly unreasonable" or when it fails to state reasons sufficient to provide appellate review of the sentencing court's discretion. *Hill*, 878 N.W.2d at 272–73. But even a "terse and succinct" statement may be sufficient "so long as the brevity of the court's statement does not prevent review." *State v. Johnson*, 445 N.W.2d 337, 343 (Iowa 1989).

Neal argues the district court abused its discretion in imposing consecutive sentences because: (1) the court did not conclude the offense of felon in possession of a firearm was separate from the robbery conviction; and (2) the court's rationale for imposing a term of imprisonment on that charge was insufficient because the rationale given was already served by the mandatory-minimum prison term for the robbery conviction.

First, the court did not abuse its discretion by failing to explicitly find the felon-in-possession-of-a-firearm offense was separate from the robbery conviction. Iowa Code section 901.8 states: "If a person is sentenced for two or more separate offenses, the sentencing judge may order the second or further sentence to begin at the expiration of the first or succeeding sentence." As long as the convictions are for "separate offenses," the sentencing court has the discretion to impose consecutive sentences on more than one conviction arising out of the same transaction. *State v. Taylor*, 596 N.W.2d 55, 57 (Iowa 1999); *State v. Criswell*, 242 N.W.2d 259, 260 (Iowa 1976); *State v. Fields*, No. 13-1200, 2014 WL 3511841, at *2 (Iowa Ct. App. July 16, 2014) (finding district court did

not abuse its discretion in imposing consecutive sentences for robbery and willful injury arising out of a single transaction). At the sentencing hearing and in the sentencing order, the district court referred to section 901.8 as the authority for imposing consecutive sentences, implicitly recognizing the two offenses, though arising from the same transaction, were separate.[3]

Second, the court did not abuse its discretion by using a similar rationale for imposing consecutive sentences as was served by the legislatively mandated minimum term of incarceration. *Cf. Hill*, 878 N.W.2d at 275 ("Sentencing courts should . . . explicitly state the reasons for imposing a consecutive sentence, although in doing so the court may rely on the same reasons for imposing a sentence of incarceration."). At Neal's sentencing, the court provided the following reasons for imposing consecutive sentences: "Pursuant to 901.5(9)(c) and 901.8, the sentences of incarceration shall be served consecutively. The court has determined that this is for maximum protection of the public and due to the nature of the offense and defendant's prior criminal record."[4]

The court understood it had discretion to choose between concurrent or consecutive sentences. In deciding consecutive sentences were more appropriate, the court focused on the nature of the offense—an armed robbery where Neal aimed his gun at the store clerk's face while demanding cash. The court also cited Neal's prior criminal record, which stretched back to 2001 and

---

[3] Neal does not raise a double jeopardy issue or argue his convictions should merge under section 701.9

[4] In the "sentencing considerations" section, the sentencing order states: "The court determines that the sentence set forth herein will provide maximum opportunity for rehabilitation of defendant and protection of the community from further offenses. Pursuant to Iowa Code section 907.5, the court has considered the following factors: the nature of the offense committed; statutory sentencing requirements."

included convictions for assault causing bodily injury, interference with official acts, theft, eluding, escape, harassment, and driving under suspension.

On appeal, Neal argues his criminal background involved "almost exclusively misdemeanors and his single felony conviction occurred twelve years before the current offense." He contends under these circumstances, the sentencing court abused its discretion in imposing a thirty-year sentence. Neal further notes his robbery sentence already carried a mandatory-minimum term of seventeen and one-half years before he is eligible for parole and urges that length of incarceration would satisfy the court's concerns about public protection.

On appeal, it is not our job to contemplate what sentence we would have imposed on Neal; instead, we review whether the district court's sentence was reasonable. *See State v. Hopkins*, 860 N.W.2d 550, 554 (Iowa 2015) (citing *State v. Formaro*, 638 N.W.2d 720, 725 (Iowa 2002), for the proposition the "inherent latitude" in sentencing process properly limits our review). It was reasonable for the district court to consider Neal's persistent recidivism and the dangerousness of a felon using a firearm to commit a robbery when opting to boxcar his sentences. We find no abuse of discretion in the imposition of consecutive terms.

**AFFIRMED.**