# IN THE COURT OF APPEALS OF IOWA

No. 21-1344
Filed August 3, 2022

**STATE OF IOWA,**
      Plaintiff-Appellee,

**vs.**

**JOSHUA WILLIAM SIMMONS,**
      Defendant-Appellant.

_____

Appeal from the Iowa District Court for Iowa County, Mitchell E. Turner, Judge.

A defendant appeals his criminal conviction, challenging the denial of his motion to suppress. **AFFIRMED.**

Alexander S. Momany of Howes Law Firm, PC, Cedar Rapids, for appellant.

Thomas J. Miller, Attorney General, and Linda J. Hines, Assistant Attorney General, for appellee.

Considered by Vaitheswaran, P.J., and Badding, J., and Potterfield, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2022).

**BADDING, Judge.**

Joshua Simmons appeals his conviction for second-offense operating while under the influence, challenging the denial of his motion to suppress evidence obtained as a result of a traffic stop that was not recorded by a dash camera. Relying on that lack of video evidence, Simmons claims that because the officer who stopped him was not credible, the court erred in finding probable cause or reasonable suspicion supported the traffic stop. We disagree and affirm the denial of Simmons's motion to suppress.

## I.     Background Facts and Proceedings

On July 5, 2020 at 12:35 a.m., Reserve Deputy Evan Welsh of the Iowa County Sheriff's Office was sitting at a stop sign in his patrol vehicle on M Avenue where it intersects with Highway 6. Welsh was facing north, had his headlights on, and was the only car at the stop sign. He "might have been parked there for a little while" because he was on the phone with another deputy. While sitting at the stop sign, Welsh saw a white Chevrolet Silverado, later found to be driven by Joshua Simmons, approach from the east on Highway 6 and make a left-hand turn onto M Avenue southbound. According to his testimony, Welsh

> observed the vehicle was traveling westbound and it made a very wide turn. It didn't stay on the paved portion of the roadway, and it traveled onto the gravel portion of the roadway, I suppose. And then as it came back onto the roadway, it crossed over the yellow centerline, and then it moved back into its lane.

Welsh turned his cruiser around and followed Simmons "to observe [his] driving patterns . . . to see if [he] continued to show patterns of inability to maintain his lane." Welsh followed Simmons for "less than a couple of minutes," which covered "probably about a mile and a half or so." He saw "the vehicle cross over

the centerline again a number of times, and then [he] viewed the vehicle . . . drop off onto the shoulder a number of times as well." Welsh could not recall exactly how many times the vehicle crossed the centerline or went off the shoulder after he began following it, but he testified it was "more than two times" each.

Welsh's cruiser was not equipped with a dash camera, but he was wearing a body camera. He activated that camera sometime after he turned around to follow Simmons, though it did not capture any of Simmons's vehicle's movements. Roughly fifty-five seconds into the video, Welsh can be heard saying: "Crossed center line and went on the shoulder several times." About ten seconds later, Welsh opened and closed his computer to launch a program for the traffic stop, activated his overhead lights, began radioing dispatch, and initiated the stop. Shortly after Welsh activated his overhead lights, Simmons pulled into the driveway of his residence.

As a result of the traffic stop, Simmons was charged with operating while under the influence. Simmons moved to suppress the evidence obtained from the stop, arguing Welsh "lacked probable cause or reasonable suspicion to stop [him] in violation of his constitutional rights." In a post-hearing brief, Simmons argued Welsh's testimony that he saw Simmons leave the paved portion of the road as he turned onto M Avenue was not credible, nor were his remaining observations because of Welsh's inability to recall specific details during his testimony, like how close he was following Simmons, how many times Simmons crossed the centerline or fog line, and geographic locations where the alleged line crossings occurred. Simmons also argued "Welsh was distracted as he was following" his vehicle.

In its suppression ruling, the district court found:

> Welsh testified credibly and without rebuttal that he personally observed [Simmons's] motor vehicle cross the centerline on at least two occasions and go onto the shoulder of the road on at least two occasions during the short distance that he followed the vehicle after he first observed it making a wide turn which included a portion of the vehicle being on the shoulder.  While he candidly admitted that he was actually speaking with another deputy sheriff on his telephone at the time that he was making many of these observations, the court does not find that these distractions were sufficient to discredit his testimony to the extent that he did not have reasonable suspicion to conduct a traffic stop.  Indeed, crossing the centerline, in the absence of an obstruction making it necessary to drive to the left of the centerline of the roadway, is a traffic violation.  *See* [Iowa Code § 321.297(1)(b) (2020)].  Furthermore, . . . Welsh's audio commentary picked up by his body cam documents that he did state, contemporaneously following the defendant, that the defendant was "all over the road."[1]  Viewing the evidence in its totality, the court finds that the State has established by a preponderance of the evidence that . . . Welsh had reasonable suspicion/probable cause to pull over the defendant's motor vehicle . . . .

The court accordingly denied Simmons's motion to suppress.  The matter proceeded to a bench trial on the stipulated minutes of evidence, following which the court found Simmons guilty as charged.

## II.     Standard of Review

Appellate review of the denial of a motion to suppress asserting a violation of a constitutional right is de novo.  *State v. Hunt*, 974 N.W.2d 493, 496 (Iowa 2022).  "We review the entire record to independently evaluate the totality of the circumstances and examine each case 'in light of its unique circumstances.'"  *State v. Hauge*, 973 N.W.2d 453, 458 (Iowa 2022) (quoting *State v. Brown*, 930 N.W.2d 840, 844 (Iowa 2019)).

---

[1] This statement did not occur until after Welsh stopped Simmons and explained: "The reason I stopped you is you're all over the roadway.

### III.    Analysis

"The Fourth Amendment [to] the United States Constitution," as applied to the states by the Fourteenth Amendment, "and article I, section 8 of the Iowa Constitution protect individuals against unreasonable searches and seizures."[2] *State v. Naujoks*, 637 N.W.2d 101, 107 (Iowa 2001); *accord State v. McNeal*, 867 N.W.2d 91, 99 (Iowa 2015).   Evidence obtained following a violation of these constitutional protections is generally inadmissible at trial.   *See Wong Sun v. United States*, 371 U.S. 471, 484–85 (1963); *Naujoks*, 637 N.W.2d at 111.

It is true that stopping an automobile and detaining its occupant amounts to a seizure under the state and federal constitutions.  *See Delaware v. Prouse*, 440 U.S. 648, 653 (1979); *State v. Coleman*, 890 N.W.2d 284, 288 (Iowa 2017).  But all that is constitutionally required for a traffic stop to be permissible is that it be reasonable.  *See* U.S. Const. amend. IV; Iowa Const. art. I, § 8.  "Generally, a traffic stop is reasonable when the police have probable cause or reasonable suspicion to believe that the motorist violated a traffic law."  *Brown*, 930 N.W.2d at 845.  Though Simmons challenges the stop on both grounds, we focus on whether the deputy had reasonable suspicion for the stop.  *See State v. McIver*, 858 N.W.2d 699, 702 (Iowa 2015) ("We find it unnecessary to decide whether the officer actually observed a violation of a rule of the road.  Instead, we conclude the officer

---

[2] Although Simmons cites the federal and state constitutions, he did not "argue that a standard independent of the federal approach should be employed under the state constitution." *State v. Tyler*, 830 N.W.2d 288, 291 (Iowa 2013).  We therefore consider the federal and state "constitutional claims simultaneously, applying the federal standards as outlined by the United States Supreme Court governing the Fourth Amendment."  *State v. Warren*, 955 N.W.2d 848, 859 (Iowa 2021).

had reasonable suspicion of intoxicated driving to stop the vehicle and investigate.").

Reasonable suspicion justifies a brief detention for investigatory purposes and is established if "the stopping officer had specific and articulable facts, which taken together with rational inferences from those facts, to reasonably believe criminal activity may have occurred." *State v. Tague*, 676 N.W.2d 197, 204 (Iowa 2004). The burden is on the State to establish reasonable suspicion by a preponderance of the evidence. *Id.* Simmons argues the State failed to meet its burden because "the State was entirely reliant upon the testimony of Welsh, who was clearly not credible given the totality of the evidence."[3]

Simmons runs into a roadblock from the start given the "considerable deference" we afford to the "trial court's findings regarding the credibility of the witnesses." *Id.* at 201. The court made clear credibility findings here, noting "Welsh testified credibly and without rebuttal" about his observations of Simmons's driving. Though we are not bound by those findings, *see id.*, there was no other evidence in the record that contradicted the deputy's testimony. *See, e.g., State v. Mohr*, No. 19-0070, 2020 WL 564907, at *2 (Iowa Ct. App. Feb. 5, 2020) (deferring to district court's credibility findings "regarding the officer—the only witness to testify at the suppression hearing"). And just because there was no

---

[3] Simmons also touches on some sort of claim that the seizure impermissibly took place on the curtilage of his home after he parked in his driveway. We agree with the State that error was not preserved on any claim that entering Simmons's property was illegal because that issue was not raised in or decided by the district court. *See State v. Webb*, 516 N.W.2d 824, 828 (Iowa 1994) ("We may not consider an issue that is raised for the first time on appeal, 'even if it is of constitutional dimension.'" (citation omitted)).

video evidence to support that testimony does not mean we should afford Welsh's testimony "zero weight," as Simmons seems to argue. *See id.* ("[V]ideo evidence is one factor to evaluate.").

In the absence of video evidence, Simmons contends that Welsh was not credible because, given the position of Welsh's cruiser, he could not have seen Simmons drive onto the shoulder of the road during their initial encounter. But Welsh testified that Simmons made a "very wide turn" onto M Avenue from Highway 6. It would not be unreasonable to conclude that Welsh, being right next to Simmons, could tell that Simmons left the paved portion of the road, especially considering that Welsh's cruiser was lower to the ground than Simmons's truck. So we agree with the State that "[i]t is not illogical or unbelievable that Deputy Welsh's vantage point permitted him to see Simmons'[s] truck tires travel onto the shoulder of the road."

Setting that point aside, Welsh's observation of Simmons's tires leaving the road was clearly not the basis for the stop, though it piqued Welsh's interest. Simmons's challenges to the credibility of Welsh's remaining observations supporting the stop are even weaker. He first complains that Welsh couldn't remember which mirror he used—the rearview or sideview—to see Simmons cross over the centerline after he returned to the road. But who would be expected to remember that sort of trivial detail at a suppression hearing nearly five months after the stop? Simmons's complaints about Welsh's inability to remember "exactly how many times or where he was located geographically on the roadway" when he saw Simmons cross over the center and fog lines are also unconvincing. However many specific times it was, Welsh's commentary on the body-camera video that

Simmons "[c]rossed center line and went on the shoulder several times" corroborates his testimony. And it is unrealistic to suggest that the State must provide measurements or identify specific landmarks of where an observed infraction occurred in order to meet its burden.

Finally, Simmons argues that Welsh "was distracted during the entire course of this incident." But we agree with the district court that these "distractions" were not "sufficient to discredit [Welsh's] testimony." The evidence simply shows that over the course of the encounter, Welsh ended his phone call, shut his laptop, reopened it to initiate a traffic program for the stop, and then radioed the stop into dispatch.

Based on our de novo review of the record, we conclude that Welsh had reasonable suspicion to investigate whether Simmons was impaired due to his weaving in and out of his lane in the short distance Welsh followed him. *See State v. Tompkins*, 507 N.W.2d 736, 739–40 (Iowa Ct. App. 1993) (collecting cases from other jurisdictions and adopting majority view that observation of a vehicle weaving within its own lane gives rise to a reasonable suspicion of impaired driving to justify stopping the vehicle); *State v. Keith*, No. 17-1044, 2018 WL 2174089, at *2 (Iowa Ct. App. Apr. 4, 2018) (collecting cases that swerving, weaving, or crossing lines provides reasonable suspicion for investigatory stop). We affirm the denial of the motion to suppress.

**AFFIRMED.**