**STATE of Iowa, Appellee,**

v.

**William G. MARTIN, Appellant.**

**No. 98–1394.**

Supreme Court of Iowa.

March 22, 2000.

Linda Del Gallo, State Appellate Defender, and John P. Messina, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Martha E. Boesen, Assistant Attorney General, Mike L. Wolf, County Attorney, and Bruce A. Ingham, Assistant County Attorney, for appellee.

LAVORATO, Justice.

A jury convicted the defendant, William G. Martin, of forgery. He appeals from a judgment of conviction and sentence, contending that the district court erred in allowing him to represent himself without determining that he made a knowing and intelligent waiver of his Sixth Amendment right to counsel. We agree and reverse and remand for a new trial.

### I. Background Facts and Proceedings.

In early October 1996, Martin presented a personal check to Harold Shadle upon a long-closed account of a person named Robert Black. The check was made payable to Harold Shadle for $500 and was signed with Robert Black's name. Black's signature on the check was allegedly a forgery.

When he presented the check to Shadle, Martin told Shadle that he—Martin—would have to get some money to his grandmother in Chicago to make the check good. Shadle later learned the check had been drawn upon a closed account. When

Shadle confronted Martin about the closed account, Martin told Shadle that he would "make it right."

On February 26, 1997, the State charged Martin with a forgery in violation of Iowa Code sections 715A.2(1)(b) and 715A.2(2)(a) (1995). The district court appointed John (Jack) Wolfe to represent Martin, who pled not guilty to the charge.

After several delays, the district court eventually scheduled a jury trial for Monday, February 2, 1998. On Friday, January 30, 1998, the court held an unscheduled hearing on Martin's request to discharge Wolfe as his trial counsel. Martin argued a conflict of interest existed between Wolfe and him. Following a painstaking and patient examination of Martin and Wolfe, the district court found there was no conflict of interest.

The court rejected Martin's request that the court appoint him a new attorney and rejected his motion for continuance. Instead, the court gave Martin three choices: keep Wolfe as his attorney, hire new counsel, or represent himself. The court recommended on two occasions that Martin keep Wolfe as his attorney. Nevertheless, Martin persisted in his opposition to Wolfe representing him and declared that he did not even want Wolfe in the courtroom. The court ultimately switched Wolfe's role to standby counsel.

The trial started as scheduled on the following Monday. During the State's case in chief, Martin acted as his own counsel, and Wolfe waited outside the courtroom in a standby capacity. Martin gave his own opening statement. The State called two witnesses, Black and Shadle. Martin cross-examined both witnesses. After the State rested, Martin moved unsuccessfully to dismiss the charge on the basis that the State had failed to prove he was the person who had written the forged check. Martin also unsuccessfully moved to continue the case. Wolfe was present only for the in-chambers discussion of the motion to continue.

On Tuesday, Martin began his case in chief. Wolfe remained outside the courtroom. Martin called two witnesses, whom he personally questioned. Martin rested following examination of the second witness. Out of the presence of the jury, the court began a discussion on the proposed instructions. It was at this point that Wolfe entered the chambers at Martin's request. Wolfe moved successfully to reopen the case so that three witnesses could be questioned—Martin; Black, who had previously testified; and Melissa Kuhse, the mother of Martin's infant child.

Martin questioned Black and Kuhse. Martin then testified on his own behalf, with Wolfe conducting the direct and redirect examination. However, at the close of redirect, Martin told Wolfe to pose to him a series of questions that Wolfe had not yet asked. Following these questions, Martin's examination was closed. Martin then questioned Kuhse, following which, Martin rested. The State called a rebuttal witness whom Martin cross-examined.

Martin, Wolfe, the prosecutor, and the court met in chambers to discuss jury instructions. Wolfe declined to give a final argument on Martin's behalf, explaining that, because he was not in the courtroom during the first half of the trial, "it would be bordering on incompetence, for me to attempt to do so." Martin thereafter delivered his own final argument.

After a brief deliberation, the jury returned a guilty verdict on the forgery charge. This was not surprising in view of Martin's inept cross-examination of the State's witnesses who demolished not only his credibility but his defense as well.

Substitute counsel—appointed by the district court—represented Martin at his sentencing. A different judge sentenced Martin to an indeterminate five-year term of imprisonment, which was suspended in favor of two years' probation.

## II. Issues on Appeal.

Martin contends the district court erred in allowing him to represent himself with-

out determining that he made a knowing and intelligent waiver of his Sixth Amendment right to counsel. The State responds that this case does not involve a denial of Sixth Amendment rights. Rather, the State argues, the issue is whether the district court abused its discretion in denying Martin's request for substitution of counsel before trial. In the alternative, the State argues that, even if Martin had not waived assistance of counsel, the active role of Wolfe at trial cured any constitutional defect.

### III. Scope of Review.

To the extent this appeal concerns the district court's denial of substitute counsel, our review is for abuse of discretion. *See State v. Webb*, 516 N.W.2d 824, 828 (Iowa 1994). Our review is de novo regarding Martin's claim that his Sixth Amendment rights were violated. *See State v. Rater*, 568 N.W.2d 655, 657 (Iowa 1997).

### IV. Substitute Counsel.

A defendant must show sufficient cause to justify the appointment of substitute counsel. *Webb*, 516 N.W.2d at 828. Sufficient cause includes " 'a conflict of interest, irreconcilable conflict, or a complete breakdown in communication between the attorney and the defendant.' " *Id.* (quoting *Smith v. Lockhart*, 923 F.2d 1314, 1320 (8th Cir.1991)). In addition, the court must balance " 'the defendant's right to counsel of his choice and the public's interest in the prompt and efficient administration of justice.' " *Id.* (quoting *United States v. Swinney*, 970 F.2d 494, 499 (8th Cir.1992)).

Martin does not contend that the district court abused its discretion in not appointing substitute counsel. In fact, in oral arguments, his appellate counsel conceded that the district court was correct when it concluded there was no conflict between Martin and Wolfe justifying appointment of substitute counsel.

Nevertheless, we agree with Martin that this is not the end of the inquiry. If the district court does not appoint substitute counsel, the court effectively requires a defendant (as occurred here) to choose between two options: continue using present counsel or proceed pro se. However, this "forced choice" of self-representation still implicates constitutional protections:

> If the district court has made the appropriate inquiries and has determined that a continuance for substitution of counsel is not warranted, the court can then properly insist that the defendant choose between representation by his existing counsel and proceeding pro se. *The court, however, has the responsibility of ensuring that any choice of self-representation is made knowingly and intelligently, with an awareness of the dangers and disadvantages inherent in defending oneself.*

*United States v. Welty*, 674 F.2d 185, 188 (3d Cir.1982) (emphasis added) (citations omitted); *see also Young v. Lockhart*, 892 F.2d 1348, 1351 (8th Cir.1989); *United States ex rel. Axselle v. Redman*, 624 F.Supp. 332, 337 (D.Del.1985); *Briscoe v. State*, 606 A.2d 103, 107 (Del.1992).

As *Welty* makes clear, this forced choice requires a defendant to choose between two constitutional options: proceeding with counsel or proceeding pro se. The latter choice—proceeding pro se—requires a careful line of questioning on the part of the trial court to determine whether the defendant knowingly and intelligently waived his right to counsel. That brings us to the question of whether the district court erred in permitting Martin to represent himself without determining that Martin had made a knowing and intelligent waiver of his right to counsel.

### V. Was There a Valid Waiver?

The Sixth Amendment to the United States Constitution guarantees that "in all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance Of

Counsel for his defense." U.S. Const. amend. VI. The Fourteenth Amendment of the Federal Constitution makes this right binding on the states. *Faretta v. California,* 422 U.S. 806, 807, 95 S.Ct. 2525, 2527, 45 L.Ed.2d 562, 566 (1975). *Faretta* interpreted the Sixth Amendment to mean that it "does not provide merely that a defense shall be made for the accused; it grants to the accused personally the right to make his defense." *Id.* at 819, 95 S.Ct. at 2533, 45 L.Ed.2d at 572.

The Sixth Amendment right to counsel is in effect until waived. *Rater,* 568 N.W.2d at 658. In contrast, the Sixth Amendment right to self-representation is not effective until asserted. *Id.* Before the right to self-representation attaches, the defendant must voluntarily elect to proceed without counsel by "knowingly and intelligently" waiving his or her Sixth Amendment right to counsel. *Faretta,* 422 U.S. at 835, 95 S.Ct. at 2541, 45 L.Ed.2d at 582; *Rater,* 568 N.W.2d at 658. The defendant's request to proceed without counsel must be "clear and unequivocal." *Id.* In addition, "courts 'indulge every reasonable presumption against waiver' of fundamental constitutional rights . . . ." *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461, 1466 (1938) (footnotes omitted) (quoting *Aetna Ins. Co. v. Kennedy,* 301 U.S. 389, 393, 57 S.Ct. 809, 811, 81 L.Ed. 1177, 1180 (1937)).

Before a trial court accepts the defendant's request to proceed pro se, the court must make the defendant "aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Faretta,* 422 U.S. at 835, 95 S.Ct. at 2541, 45 L.Ed.2d at 582 (quoting *Adams v. United States,* 317 U.S. 269, 279, 63 S.Ct. 236, 242, 87 L.Ed. 268, 275 (1942)); *accord Rater,* 568 N.W.2d at 658. "[A] defendant who elects to represent himself cannot thereafter complain that the quality of his own defense amounted to a denial of 'effective assistance of counsel.'" *Faretta,* 422 U.S.

at 833 n. 46, 95 S.Ct. at 2541 n. 46, 45 L.Ed.2d at 581 n. 46.

In *State v. Spencer,* 519 N.W.2d 357, 360 n. 1 (Iowa 1994), we pointed the bench and bar to a model inquiry for determining a knowing and intelligent waiver of counsel. The model inquiry is found in 1 *Bench Book for United States District Judges* 1.02–2 (3d ed.1986), as well as *United States v. McDowell,* 814 F.2d 245, 251–52 (6th Cir.1987). *See also Spencer v. Ault,* 941 F.Supp. 832, 843–44 (N.D.Iowa 1996). Another excellent model is found in the Iowa Bench Book, 5–37 to 5–41 (1999). We suggest either model inquiry in forced-choice situations such as the one here.

The State concedes, and we agree, that the district court permitted Martin to proceed pro se without any colloquy about the hazards of self-representation and therefore did not determine whether Martin's choice of self-representation was made knowingly and intelligently. (Martin's choice, however, was voluntary because a refusal without good cause to proceed with able appointed counsel is a "voluntary" waiver. *United States v. Taylor,* 113 F.3d 1136, 1140 (10th Cir.1997).) The record reveals the district court did nothing more than merely recommend on two separate occasions that Martin keep Wolfe as his counsel at trial. While we sympathize with the frustration and exasperation of the district court, " 'even well-founded suspicions of intentional delay and manipulative tactics can provide no substitute for the inquiries necessary to protect a defendant's constitutional rights.' " *McMahon v. Fulcomer,* 821 F.2d 934, 943 (3rd Cir.1987) (quoting *Welty,* 674 F.2d at 189).

Nevertheless, the State insists that, under the facts of this case, we need not reverse. The State argues that, although the *Faretta* colloquy was lacking in this case, this constitutional defect was cured when Martin allowed Wolfe to assume representation during the trial. That brings us to the State's alternative argument.

**VI. Was Martin's Invalid Waiver Cured By the Appointment of Standby Counsel and Standby Counsel's Participation in the Trial?**

■■■■■ In addition to recognizing a defendant's Sixth Amendment right to self-representation in *Faretta*, the Supreme Court also held that a trial court may appoint " 'standby counsel' " to assist the pro se defendant in the defense. 422 U.S. at 834 n. 46, 95 S.Ct. at 2541 n. 46, 45 L.Ed.2d at 581 n. 46. The trial court may appoint standby counsel even over the defendant's objection. *Id.* The purpose of the appointment of such counsel is "to aid the accused if and when the accused requests help, and to be available to represent the accused in the event that termination of the defendant's self-representation is necessary." *Id.*

■■■ In *McKaskle v. Wiggins*, the Court spelled out what role standby counsel may play consistent with the protection of the defendant's *Faretta* rights. 465 U.S. 168, 170, 104 S.Ct. 944, 947, 79 L.Ed.2d 122, 128 (1984). In spelling out that role, the Court imposed two general limitations upon standby counsel's unsolicited participation at trial. First, "[t]he pro se defendant must be allowed to control the organization and content of his own defense, to make motions, to argue points of law, to participate in *voir dire*, to question witnesses, and to address the court and the jury at appropriate points in the trial." *Id.* at 174, 104 S.Ct. at 949, 79 L.Ed.2d at 131; *see also Rater*, 568 N.W.2d at 658. Therefore, "[i]f standby counsel's participation over the defendant's objection effectively allows counsel to make or substantially interfere with any significant tactical decisions, or to control the questioning of witnesses, or to speak *instead* of the defendant on any matter of importance, the *Faretta* right is eroded." *McKaskle*, 465 U.S. at 178, 104 S.Ct. at 951, 79 L.Ed.2d at 133.

■■ Second, "participation by standby counsel without the defendant's consent should not be allowed to destroy the jury's perception that the defendant is representing himself." *Id.; accord Rater*, 568 N.W.2d at 658.

As we said in *Rater*, "[e]ssentially, standby counsel has two purposes—to act as a safety net to ensure that the litigant receives a fair hearing of his claims and to allow the trial to proceed without the undue delays likely to arise when a layman presents his own case." 568 N.W.2d at 658.

In *McKaskle*, the Court also recognized that the defendant can waive his or her *Faretta* rights:

> Participation by counsel with a pro se defendant's express approval is, of course, constitutionally unobjectionable. A defendant's invitation to counsel to participate in the trial obliterates any claim that the participation in question deprived the defendant of control over his own defense. Such participation also diminishes any general claim that counsel unreasonably interfered with the defendant's right to appear in the status of one defending himself.

*Id.* at 182, 104 S.Ct. at 953, 79 L.Ed.2d at 136.

■■ Given this limited role of standby counsel, it is well-settled that "the appointment of standby counsel is insufficient to satisfy the Sixth Amendment right to counsel when the court has failed to conduct an inquiry to ensure the defendant's waiver of that right was knowing and intelligent." *Rater*, 568 N.W.2d at 661 (citing *United States v. Sandles*, 23 F.3d 1121, 1128 (7th Cir.1994); *United States v. Padilla*, 819 F.2d 952, 956–57 (10th Cir. 1987)). The State, however, argues that, when standby counsel actually plays an active role in the criminal proceedings, then that involvement is sufficient to cure a defective waiver. The State cites only *McKaskle* to support its argument.

*McKaskle* is not directly on point because the Court did not explain *how* participation of counsel could cure a defective waiver. Rather, the court was explaining how a defendant who invites the participation of counsel may not later claim that counsel inappropriately interfered with defendant's right to self-representation in violation of the defendant's Sixth Amendment right to self-representation.

Nevertheless, some courts have used *McKaskle's* control-of-litigation standard in assessing whether standby counsel's participation cured the defective waiver. On this point, we note the Court in *McKaskle* concluded that standby counsel's participation in the trial did not interfere with the defendant's control over his defense. *McKaskle*, 465 U.S. at 185, 104 S.Ct. at 954, 79 L.Ed.2d at 137. Significantly, in that case, standby counsel's participation consisted of informing the court of the whereabouts of witnesses, supplying the defendant with a form needed to elect to go to the jury at the punishment phase of the trial, explaining to the defendant that he should not argue his case while questioning a witness, and questioning a witness to lay a proper foundation for the introduction of an exhibit. *Id.*

In *Briscoe* standby counsel participated in the presentation of the defendant's defense by making the opening statement, raising several objections, proffering evidence at the defendant's request, completing the direct examination of one witness, and making several motions. Nevertheless, the appellate court concluded that notwithstanding this participation, the defendant, not standby counsel, "continued to conduct all other aspects of his own defense and to make all of the strategic decisions normally made by counsel." *Briscoe*, 606 A.2d at 111 (citing *McKaskle*, 465 U.S. at 176–77, 104 S.Ct. at 949–50, 79 L.Ed.2d at 132). The court further concluded that "the record in this case does not support a conclusion that [the defendant's] standby counsel in any sense controlled the course of the litigation or un-

dermined [the defendant's] 'appearance before the jury in the status of a pro se defendant.'" *Id.* (quoting *McKaskle*, 465 U.S. at 185, 104 S.Ct. at 954, 79 L.Ed.2d at 137). Based on this reasoning, the court held that standby counsel's participation "did not cure the defendant's admittedly ineffective waiver of his Sixth Amendment right to counsel." *Id.*

Similarly, in *United States ex rel. Axselle v. Redman*, the federal district court recognized that under certain circumstances the performance of standby counsel may cure a defective waiver. 624 F.Supp. at 339 (a case of forced choice between proceeding with present counsel or proceeding pro se). However, the court concluded this was not one of those cases. Standby counsel at the defendant's request made an objection for him and moved for a mistrial that was overruled. Counsel also made three later objections and a motion for judgment of acquittal. On the last day of trial, the defendant specifically asked counsel to address the court on his behalf to introduce certain documents into evidence. The defendant conducted the examination of witnesses, testified in his own behalf, and made the opening and closing arguments to the jury. Citing *McKaskle*, the court refused to interpret defendant's requests of standby counsel as proof that counsel controlled the course of the litigation. *Id.* at 340.

Here, Wolfe's participation fell well short of curing the defective waiver. Martin unquestionably controlled his defense. The record reveals that Martin formulated and directed his defense theories. He made an opening statement, conducted most of the examination and cross-examination of witnesses, made a motion for judgment of acquittal, and made a final argument.

In contrast, Wolfe's role was limited. He was out of the courtroom during all of the State's case in chief and half way through Martin's defense. The only witness he examined was Martin, and the record shows that Martin directed a por-

tion of this questioning. While Wolfe did make a motion to reopen the case, he made the motion at Martin's request. Wolfe also introduced certain evidence, but again this happened only after Martin requested Wolfe's assistance to do so.

## VII. Should Harmless Error Analysis Apply?

 Although the State did not raise the issue in its brief, a question arose in oral arguments whether we should employ a harmless-error analysis. *Rater* controls on this question. In *Rater,* a forced-choice case, we held that whether the defendant was actually prejudiced by the district court's failure to conduct a sufficient inquiry was irrelevant. 568 N.W.2d at 661. We said this was so because a "[h]armless error analysis is not applicable to Sixth Amendment right to self-representation questions." *Id.; see also Rose v. Clark,* 478 U.S. 570, 578–79, 106 S.Ct. 3101, 3106, 92 L.Ed.2d 460, 471 (1986) (recognizing that harmless-error analysis does not apply in all contexts and noting that the doctrine presupposes that a defendant is represented by counsel); *Glasser v. United States,* 315 U.S. 60, 76, 62 S.Ct. 457, 467, 86 L.Ed. 680, 702 (1942) ("The right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial."); *United States v. Allen,* 895 F.2d 1577, 1579–80 (10th Cir.1990) ("[T]he right to counsel 'is so basic to a fair trial that [its] infraction can never be treated as harmless error.' " (quoting *Penson v. Ohio,* 488 U.S. 75, 88, 109 S.Ct. 346, 353–54, 102 L.Ed.2d 300, 313–14 (1988))); *United States v. Balough,* 820 F.2d 1485, 1489–90 (9th Cir.1987) (holding that harmless-error analysis is inappropriate when defendant does not knowingly and intelligently waive right to counsel). We reaffirm our position in *Rater* and therefore decline to employ a harmless-error analysis.

## VIII. Disposition.

In sum, we conclude the district court erred in allowing Martin to represent himself without determining whether he made a knowing and intelligent waiver of his right to counsel. As a result, Martin's Sixth Amendment right to counsel was violated. The district court's appointment of standby counsel and counsel's participation at trial did not cure the defective waiver. Finally, we conclude a harmless-error analysis is not appropriate. We therefore reverse and remand for new trial.

**REVERSED AND REMANDED.**

All justices concur except CARTER and LARSON, JJ., who dissent, and McGIVERIN, C.J., who takes no part.

CARTER, Justice (dissenting).

I dissent.

This defendant proceeded without an attorney, not because he preferred to appear pro se, but because he chose to match his will against that of the trial court with respect to the judge's decision not to give him a different court-appointed attorney. The loss of the court-appointed attorney that had been provided to him was the inevitable result of that decision. The situation did not warrant a special inquiry or admonition from the court concerning pro se representation. Defendant should not be granted any relief.

LARSON, J., joins this dissent.