# IN THE COURT OF APPEALS OF IOWA

No. 15-1680
Filed February 22, 2017

**STATE OF IOWA,**
      Plaintiff-Appellee,

**vs.**

**ELMER PAUL SCHECKEL,**
      Defendant-Appellant.

_____

      Appeal from the Iowa District Court for Buchanan County, David F. Staudt, Judge.

      A defendant appeals his convictions for interference with judicial acts and tampering with a witness. **AFFIRMED.**

      Mark C. Smith, State Appellate Defender, and Maria L. Ruhtenberg, Assistant Appellate Defender, for appellant.

      Thomas J. Miller, Attorney General, and Sharon K. Hall, Assistant Attorney General, for appellee.

      Considered by Vogel, P.J., and Tabor and Mullins, JJ.

**PER CURIAM.**

The district court found Elmer Scheckel guilty of interference with judicial acts, in violation of Iowa Code section 720.7 (2013), and tampering with a witness, in violation of section 720.4, following a bench trial on stipulated minutes of evidence. On appeal, Scheckel argues the State's evidence was insufficient to prove these crimes. Scheckel alternatively seeks a new trial, alleging the district court did not properly inquire into his waiver of the right to counsel. In a supplemental pro se brief, Scheckel questions the court's jurisdiction and claims he was not afforded his right to a grand jury and a speedy trial.

After thoroughly reviewing the evidence and the law, we find no basis for granting relief. The stipulated record established Scheckel's guilt on both crimes beyond a reasonable doubt. Because Scheckel had counsel, he is not entitled to a new trial. We see no merit in his remaining claims.

## I. Facts and Prior Proceedings

In September 2012, Independence Police Captain Brian Brinkema arrested Scheckel for driving with a suspended license. The State also charged Scheckel with operating without valid registration, driving without insurance, failure to maintain registration plates, and unlawful use of a driver's license. Captain Brinkema testified at Scheckel's March 2013 jury trial in magistrate's court. The jury convicted Scheckel of the simple misdemeanor offenses, and Magistrate Steven Ristvedt entered judgment and sentence on March 21, 2013.

A few weeks later, Captain Brinkema and Magistrate Ristvedt each received a letter bearing the signature "Elmer Scheckel" and listing the docket numbers for Scheckel's traffic offenses. The letter suggested those offenses

violated Scheckel's constitutional rights and stated: "[Y]ou have committed fraud upon the court, and Scheckel." The letter also alleged: "[Y]ou have become indebted to Scheckel" for $87,241 based on "[d]eceit and collusion that you have actively and intentional done." The letter cited several cases discussing a right to travel and then provided the following:

> Failure to show what case law, laws and how . . . Scheckel is not exercising of a constitutional rights and when these case[s] have bin overturned in writing dispute this, you agree to damages you have done and agree to pay after 30 days from the date below, your silence is acquiesce and grant permission for Scheckel to place liens on you for that dollar amount you agree to and have damaged him.

The letter, dated April 18, 2013, listed the home addresses of both the police officer and the magistrate. Based on the letter, the State charged Scheckel by trial information with interference with judicial acts and tampering with a witness, both aggravated misdemeanors. Scheckel appeared in person for his May 17, 2013 arraignment and demanded speedy trial.

Scheckel did not have an attorney in the early months of his case. In a July 5 order, the court indicated it would take no action on Scheckel's request for appointment of standby counsel until he applied for court-appointed counsel. When Scheckel appeared without counsel at a July 23 pretrial conference, the court explained he "had an absolute right to represent himself in this matter." But the court also advised Scheckel he had the right to an attorney and "that by proceeding without an attorney you may place yourself at a disadvantage" because an attorney has special training in criminal procedure and jury selection. The judge noted Scheckel had represented himself in magistrate court but cautioned if he went forward without an attorney he would do so "without

assistance from the court or anyone else." Scheckel said he understood and wished to represent himself "for the time being." The topic of self-representation was again briefly discussed at an October 15 pretrial conference; the court asked Scheckel: "Will you employ counsel or are you going to represent yourself?" and Scheckel replied: "Myself."

Scheckel represented himself at a jury trial on October 23. The jury returned guilty verdicts on both counts. On December 3, Scheckel requested the appointment of standby counsel, which the court granted on January 2, 2014. Standby counsel Laura Gavigan reviewed the record and sought a new trial for Scheckel, alleging the district court failed to obtain a valid waiver of his right to counsel. On April 15, the court granted a new trial, concluding the waiver-of-counsel discussions did not go into "enough specificity with [Scheckel] about how difficult it might be to defend this type of charge" and did not sufficiently inform him about the availability of standby counsel.

The court set the new trial for May 7. Twice the State asked to continue the trial based on the unavailability of witness Ristvedt. On April 29, Scheckel filed a pro se motion for change of venue. At a May 6 pretrial conference, the court reminded Scheckel he was facing "technical charges" that could "land [him] with up to four years in prison" and asked: "Are you sure you want to be your own lawyer?" The court briefly discussed the challenge of conducting a jury trial and limitations on the role of standby counsel. Scheckel said he "had no choice last time." The court asked: "So you know how to do this and you're gonna be okay?" Scheckel said he didn't know if he knew "how to do it" but followed what the court was telling him.

On May 20, the court denied the change-of-venue motion and continued the trial until June 11. Also on May 20, Scheckel filed a motion to dismiss, asserting a violation of the one-year speedy trial deadline. On June 3, the court overruled the motion to dismiss, finding good cause for the delay following the grant of a new trial. Scheckel then waived his right to speedy trial.

On July 1, defense counsel filed a motion to dismiss, alleging Scheckel's letter was protected speech. During an August 12 hearing on the motion, the court discussed the role of standby counsel, clarifying that attorney Gavigan was only present to give legal advice, not to make the arguments if Scheckel planned to represent himself: "Because I mean either she's your lawyer or she's standby counsel or she's not. So she can't be a little bit pregnant here." The court denied the motion to dismiss on September 8, finding the letter was not protected by the First Amendment.

Scheckel appeared with Gavigan on September 24 and elevated her from standby to "regular counsel." He then waived a jury trial and stipulated to the minutes of evidence. The court issued its findings of fact, conclusions of law, and judgment on October 27, 2014. The court sentenced Scheckel to eight days in jail. Scheckel now appeals his convictions.

## II. Scope and Standards of Review

We review the district court's decision that the stipulated evidence was sufficient to convict Scheckel of the charged offenses for correction of legal error. *See State v. Howse*, 875 N.W.2d 684, 688 (Iowa 2016). We view the record "in the light most favorable to the State, including all reasonable inferences that may be fairly drawn from the evidence." *Id.* We will uphold the convictions if

substantial evidence supports them. *Id.* (defining substantial as proof from which a reasonable trier of fact could "conceivably find the defendant guilty beyond a reasonable doubt"). Our scope of review on the one-year speedy trial claim is also for correction of legal error. *See State v. Elder*, 868 N.W.2d 448, 452 (Iowa Ct. App. 2015). We review constitutional issues, such as the right to counsel, de novo. *See State v. Martin*, 608 N.W.2d 445, 449 (Iowa 2000).

### III. Analysis

#### A. Sufficiency of the Evidence

**Interference with Judicial Acts.** The district court decided Scheckel's communication with Magistrate Ristvedt constituted interference with judicial acts. That offense requires proof a person (1) harassed a judicial officer in violation of section 708.7 and (2) did so "with the intent to interfere with or improperly influence, or in retaliation for, the official acts of a judicial officer." Iowa Code § 720.7(2). A person commits harassment when "with intent to intimidate, annoy, or alarm another person," the person communicates in writing "without legitimate purpose and in a manner likely to cause the other person annoyance or harm." *Id.* § 708.7(a)(1).

On appeal, Scheckel does not challenge the State's proof he wrote the letter. In addition, Scheckel does not contest Magistrate Ristvedt's status as a judicial officer. Nor does he discuss the element of retaliation. Scheckel concentrates on the harassment aspect of the charge, contending he did not have the intent to intimidate, annoy, or alarm Magistrate Ristvedt. He also claims the letter had a legitimate purpose and was not written in a manner to cause the magistrate annoyance or harm. Scheckel contends judicial officers should "be

held to a higher standard of tolerance for upset litigants who disapprove of the outcome of a judicial proceeding."

Magistrate Ristvedt was prepared to testify he read the letter as containing a "threat to place a lien" on his home "if he did not pay Defendant $87,241" for the amount of time the judicial officer sentenced Scheckel to jail. Given his past interactions with Scheckel, the magistrate viewed the letter as a "legitimate" threat. He was "alarmed" because the letter listed "his name and personal residence address he shares with his wife and small grandchildren."

The district court concluded the stipulated evidence proved Scheckel's intent to intimidate, annoy, or alarm the judicial officer. The court highlighted the "wild accusations" in the letter and the threat of a "nonjudicial lien on the judicial officer's property." Given the tenor and timing of the letter, we find substantial evidence supporting the district court's conclusion. *See State v. Evans*, 672 N.W.2d 328, 331 (Iowa 2003) ("Intent is a matter that is seldom capable of direct proof. Consequently, we have recognized that a trier of fact may infer intent from the normal consequences of one's actions.").

The district court also concluded Scheckel communicated in a manner likely to cause the magistrate annoyance or harm and without legitimate purpose. The court reasoned: "The threat of an invalid and unsubstantiated lien being filed at the county record's office is likely to cause a judicial officer annoyance or harm." The court found no valid reason for Scheckel to present this letter to the judicial officer weeks after the trial ended. These conclusions are supported by substantial evidence. *See State v. Miller*, No. 15-1109, 2016 WL 4384647, at *2 (Iowa Ct. App. Aug. 17, 2016) (upholding conviction for interference with judicial

acts based on threat of filing liens in defendant's communications with magistrate).

**Tampering with a Witness.** The district court also decided Scheckel's communication with Captain Brinkema following his testimony against Scheckel constituted tampering with a witness. This crime requires proof a person harassed a witness in any case "in retaliation for anything lawfully done" by that witness. Iowa Code § 720.4. Scheckel does not contest Brinkema's status as a witness. Nor does he discuss the retaliation-for-anything-lawfully-done element. Instead, Scheckel concentrates on the harassment elements of intent to intimidate, annoy, or alarm; legitimate purpose; and a manner to cause annoyance or harm. He compares his case to *State v. Fratzke*, 446 N.W.2d 781, 785 (Iowa 1989) (reversing harassment conviction based on citizen's letter complaining about speed laws, enforcement priorities, and one particular state trooper).

According to the minutes of evidence, Captain Brinkema would testify "he felt threatened by this letter, both personally and financially." The officer "felt intimidated by this letter, as it contained his name and personal residence address he shares with his wife and child." The district court decided: "Given the nature of the letter the State has proven that there is no legitimate purpose for the communication between the defendant and the witness following the trial." The court ruled the communication was done in a manner to cause the witness annoyance and harm. The court also found Scheckel had the specific intent to intimidate and annoy the witness.

Substantial evidence in the record supports the district court's decision. This case differs from *Fratzke* because no lawful purpose for Scheckel's communication existed. *See State v. Baker*, 688 N.W.2d 250, 254 n.2 (Iowa 2004). The criminality of Scheckel's conduct turned on his threat of retaliation against Captain Brinkema for his role as a trial witness. *See id.* at 253–55 (describing aim of section 720.4 as preserving integrity and fairness of judicial system by preventing harassing contact with jurors or witnesses). The State's evidence was sufficient to prove the elements of section 720.4

### B. Waiver of Counsel

Scheckel argues he is entitled to a new trial because the district court did not adequately inquire into his choice to waive counsel under the Sixth Amendment. *See Martin*, 608 N.W.2d at 450; *see also Faretta v. California*, 422 U.S. 806, 819 (1975). He focuses on the May 6, 2014 pretrial conference that occurred after he was granted a new trial. He contends the court's guidance and questions about his self-representation at that hearing did not meet constitutional standards for a waiver-of-counsel colloquy. *See Martin*, 608 N.W.2d at 450 (reiterating court's obligation under *Faretta* to make defendant "aware of the dangers and disadvantages of self-representation" so he realizes the consequences of his choice (citation omitted)).

In criticizing the court's brief discussion on May 6, Scheckel ignores what happened before and after that date. Scheckel received a new trial based on the court's failure to provide an adequate *Faretta* colloquy before his October 23, 2013 jury trial. The court appointed standby counsel on January 2, 2014. And

Scheckel was fully represented by counsel when he waived a jury trial and stipulated to the minutes of evidence on September 24, 2014.

These circumstances are not governed by *Martin*, where the court held that participation by standby counsel in criminal proceedings was not sufficient to cure a defective waiver. *See id.* at 452 (observing Martin controlled his own defense). Scheckel expressly assented on the record to Gavigan assuming the role of lead counsel. *See United States v. Swinney*, 970 F.2d 494, 498 (8th Cir. 1992) ("The defendant remains free, of course, to elevate standby counsel to a lead counsel role, thereby waiving the defendant's *Faretta* rights."). Here, Scheckel is not complaining he was denied the right to self-representation. Instead, he points to an uninformed waiver of counsel that he later revoked by deciding to proceed with counsel. The deprivation from an inadequate waiver-of-counsel colloquy is self-representation without being fully informed of the hazards of not having an attorney to assist. *See Martin*, 608 N.W.2d at 449 (framing question as follows: "whether the district court erred *in permitting Martin to represent himself* without determining that Martin had made a knowing and intelligent waiver of his right to counsel"). When a defendant has representation, no deprivation of the right to counsel occurs, regardless of the adequacy of the colloquy.[1] Because Scheckel did not represent himself at the second trial that

---

[1] Our court has previously addressed similar situations, holding elevation of standby counsel to full counsel eliminates a claim the defendant was deprived of a Sixth Amendment right to counsel. *See, e.g.*, *State v. Jaimes*, No. 15-2181, 2016 WL 7395751, at *4 (Iowa Ct. App. Dec. 21, 2016) (citing *Page v. State*, No. 14-1842, 2016 WL 719243, at *3 (Iowa Ct. App. Feb. 24, 2016)).

resulted in the convictions on appeal, we find no cause for granting a third trial.[2]

## C. Issues Raised in Pro Se Supplemental Brief

**Jurisdiction.** Scheckel makes general assertions concerning personal and subject matter jurisdiction. In criminal cases, personal jurisdiction—the exercise of State power over the defendant—requires only the physical presence of the defendant in the state. *State v. Rimmer*, 877 N.W.2d 652, 662 (Iowa 2016). Scheckel was present in Iowa. Subject matter jurisdiction refers to a court's power to hear and decide a general class of cases, not the particular case before it. *See Schrier v. State*, 573 N.W.2d 242, 244 (Iowa 1997). Iowa district courts have subject matter jurisdiction over criminal cases. *See* Iowa Const. art. V, § 6.2; Iowa Code § 602.6101. No jurisdictional problem exists here.

**Grand Jury.** Scheckel complains he was denied his right to a grand jury. Scheckel "has no federal constitutional right to be indicted by a grand jury rather than being charged by county attorney's information." *State v. Lint*, 270 N.W.2d 598, 599 (Iowa 1978). He also has no state constitutional right to a grand jury indictment. *See* Iowa Const. art. I, § 11. No violation occurred in regards to the charging instrument.

**One-Year Speedy Trial.** Scheckel also alleges he was denied his right to a speedy trial. Iowa Rule of Criminal Procedure 2.33(2)(c) requires all criminal cases be "brought to trial within one year after the defendant's initial arraignment" unless "an extension is granted by the court, upon a showing of good cause." Scheckel was arraigned on May 17, 2013, and moved to dismiss on speedy-trial

---

[2] Scheckel does not claim his status as a self-represented litigant with Gavigan as standby counsel from January 2 until September 24, 2014, deprived him of the right to counsel at a critical stage of the proceedings.

grounds on May 20, 2014.[3] The district court found the State established good cause for continuing the case beyond the one-year deadline based on the unavailability of a critical prosecution witness for the retrial date. *See State v. Petersen*, 288 N.W.2d 332, 335 (Iowa 1980) (affirming district court's finding of good cause for delay based on absence of a witness). The court also found delay attributable to Scheckel, who asked for a change of venue on April 29, 2014. *See State v. Hart*, 703 N.W.2d 768, 772 (Iowa Ct. App. 2005) ("'Delay attributable to the defendant' may include whatever passage of time is 'reasonably necessary' to act upon a defendant's motion." (citation omitted)). Finally, the district court concluded Scheckel was not prejudiced by the delay. *See State v. Rodriguez*, 511 N.W.2d 382, 383–84 (Iowa 1994). Finding no error in the district court's speedy-trial analysis, we affirm on this issue.

To the extent Scheckel raises further issues in his supplemental brief, they are not fully enough developed to merit consideration.

**AFFIRMED.**

---

[3] After the district court granted Scheckel a new trial, the matter proceeded under the original trial information. Consequently, the one year runs from his initial arraignment under the terms of the rule. *See generally State v. Fisher*, 351 N.W.2d 798, 801–02 (Iowa 1984).