# IN THE COURT OF APPEALS OF IOWA

———————————

No. 25-0455
Filed April 29, 2026

———————————

**State of Iowa,**
Plaintiff–Appellee,
v.
**Ralph Gilbert Webb II,**
Defendant–Appellant.

———————————

Appeal from the Iowa District Court for Madison County,
The Honorable Charles C. Sinnard, Judge.

———————————

**AFFIRMED**

———————————

Angela L. Campbell and Madalyn Elizabeth Grask of Dickey, Campbell, &
Sahag Law Firm, PLC, Des Moines, attorney for appellant.

Brenna Bird, Attorney General, and Joseph D. Ferrentino, Assistant
Attorney General, attorneys for appellee.

———————————

Considered without oral argument
by Tabor, C.J., and Badding and Sandy, JJ.
Opinion by Badding, J.

1

**BADDING, Judge.**

A family dispute led to a fight between two couples: Meranda and Dillon Horton, and Sherry Sheridan and Ralph Webb. The Hortons testified that Webb assaulted them, while Sheridan and Webb denied that any contact occurred. Crediting the Hortons' testimony, the jury found Webb guilty of assault causing bodily injury to Meranda.[1] Webb appeals that conviction,[2] challenging the district court's rulings that excluded his request to admit video evidence and denied his motions for substitute counsel and a new trial. Finding no abuse of discretion, we affirm.

## I.     Background Facts and Proceedings

Sherry Sheridan and her daughter own a house together, which has made their relationship "very strained," according to Sheridan. When her daughter was out of town in June 2024, Sheridan went to the house with her fiancé—Ralph Webb—to take pictures for her attorney. Meranda Horton and her husband, Dillon, were there house-sitting for Sheridan's daughter.

While Sheridan was in the garage, Meranda came out of the house and yelled at her "to get the F out." Sheridan refused, and an altercation broke out between the two women. Webb, who was standing nearby, heard the commotion and ran into the garage.

Meranda testified that when Webb came in, he struck her on the back of the head, briefly knocking her unconscious. She recalled lying in the fetal

---

[1] Because they share a last name, we refer to the Hortons by their first names.

[2] The jury also found Webb guilty of simple misdemeanor assault against Dillon. However, Webb's appeal challenges only the conviction for assault causing bodily injury, and so we limit our review accordingly. Our supreme court denied Webb's separate application for discretionary review of his simple-misdemeanor-assault conviction.

position and feeling as though she was "being attacked," although she could not remember whether Webb was hitting or kicking her. Meranda screamed for her husband. Dillon testified that when he went into the garage, he saw Meranda on the floor behind a pickup with Webb standing over her. Dillon yelled at Webb, who started chasing Dillon around the garage. As Dillon was running away, Webb hit him on the side of the face. Dillon—who was not armed—threw his hands up to avoid fighting with Webb. But Webb continued to swing and lunge at him until the Hortons made it back into the house.

Webb and Sheridan remembered the fight differently. Webb testified that when he ran into the garage, he saw "blood all down the front of" Sheridan. He stepped in to separate Sheridan and Meranda. As he did so, Webb testified that he heard Meranda yell for Dillon. When Webb turned around, he saw Dillon coming towards him while reaching back for something—like "he was trying to pull a gun." Webb testified that he "took a swing" at Dillon and chased him back into the house. But he denied making contact with Dillon. Webb also testified that Meranda's story was "absolutely untrue." He maintained that "[s]he was not on the floor. I did not hit her to knock her on the floor. . . . I absolutely did not put a finger on Meranda Horton." Sheridan supported Webb's story, testifying that he "did not have physical contact with either" of the Hortons.

But Deputy Ryne Little, who investigated the incident, testified that Meranda had "about a 2-inch goose egg" on the back of her head, along with bruises on her arm, elbow, and leg. Meranda told him that her injuries were from Webb. Dillon also had a couple of scratches above his lips, which he thought were from Webb. After reviewing video from a motion-activated camera in the garage, the deputy charged Webb with two counts of assault

causing bodily injury. A jury found him guilty as charged for the count involving Meranda and guilty of simple assault against Dillon.

On appeal from his conviction for assault causing bodily injury, Webb claims the district court abused its discretion in excluding a video exhibit of the altercation between Sheridan and Meranda that he offered at trial. He also claims the court erred in denying his mid-trial request for a new attorney and in denying his motion for a new trial based on the weight of the evidence.

## II.    Standard of Review

Webb's challenges to the district court's exclusion of evidence, as well as to the court's denial of his motion for substitute counsel and motion for new trial, are reviewed for an abuse of discretion. *See State v. Helmers*, 753 N.W.2d 565, 567 (Iowa 2008) (evidentiary ruling); *State v. Martin*, 608 N.W.2d 445, 449 (Iowa 2000) (substitute counsel); *State v. Ary*, 877 N.W.2d 686, 706 (Iowa 2016) (new trial).

## III.    Analysis

### A.    Exclusion of Evidence

During the cross-examination of Meranda, defense counsel sought to admit a video showing the altercation between Sheridan and Meranda that occurred before Webb entered the garage, where the women were pushing and hitting one another. Defense counsel offered the exhibit to impeach Meranda's testimony and to suggest that her injuries may have resulted from that altercation rather than from Webb. The State objected, arguing that the video's prejudicial effect substantially outweighed its probative value.

The district court sustained the objection, explaining:

> The Court does find that it is somewhat relevant to help the defense establish a separate cause to some of the injuries to the proffered witness—[specifically] the portion of that exhibit starting with where the defendant enters into the garage and proceeds over to the witness and the other party. The Court does find that the portion of the proffered exhibit prior to the defendant entering the garage which shows the altercation between the two women would be overly prejudicial, or its prejudice would substantially outweigh its probative value, in that the defendant was not there to witness it and in that it may mislead or distract the jury causing them to—I guess—impute determination of who may have started the initial altercation.

Iowa Rule of Evidence 5.403 allows the court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Whether evidence should be excluded under this rule depends on a two-part test: "First, we consider the probative value of the evidence. Second, we balance the probative value against the danger of its prejudicial or wrongful effective upon the triers of fact." *State v. Lacey*, 968 N.W.2d 792, 807 (Iowa 2021) (cleaned up). "Because the weighing of probative value against probable prejudice is not an exact science, we give a great deal of leeway to the trial judge who must make this judgment call." *State v. Newell*, 710 N.W.2d 6, 20–21 (Iowa 2006).

Webb contends the court abused its discretion in this balancing process because the video "would have directly contradicted Meranda Horton's testimony and demonstrated her lack of credibility." He also argues the video would have shown that Meranda "sustained her injuries during her altercation with Sheridan and not from Webb." But Webb does not explain what content in the video contradicted Meranda's testimony.

5

And, as Webb recognizes, both Meranda and Sheridan testified about their altercation before Webb entered the garage. Meranda also acknowledged on cross-examination that some of her scratches and bruises could have come from the fight with Sheridan.

Against this backdrop, we find no abuse of discretion in the district court's ruling—which did not exclude the video in its entirety. The part that the court allowed into evidence showed Webb entering the garage while Meranda and Sheridan were still engaged with one another. The court reasonably concluded that allowing the earlier footage—depicting events Webb did not witness—could confuse or mislead the jury by shifting its focus to the altercation between the two women. That issue was irrelevant to whether Webb later assaulted the Hortons. *See Lacey*, 968 N.W.2d at 808 (concluding the court correctly found that text messages between the defendant and victim "risked misleading or confusing the jury and improperly shifting its focus to [the victim's] own conduct—conduct that was already well established by other evidence presented to the jury"). Considering the "wide discretion" afforded to the court under rule 5.403, we cannot conclude its decision to exclude the video of the fight between Meranda and Sheridan "was clearly untenable or unreasonable under the circumstances presented." *Id.*

## B. Request for Substitute Counsel

Webb next challenges the district court's denial of his request for new counsel during his trial. "To justify the appointment of substitute counsel, a defendant must show sufficient cause." *State v. Lopez*, 633 N.W.2d 774, 778 (Iowa 2001). "Sufficient cause includes a conflict of interest, irreconcilable conflict, or a complete breakdown in communication between the attorney and the defendant." *Id.* (citation omitted). Webb claims the

last two grounds are at issue, arguing that "it should have been obvious to the court at the time of [his] request for new counsel that there was an irreconcilable conflict and a complete breakdown in communication between Webb and his trial counsel."[3] We disagree.

On the irreconcilable-conflict ground, Webb argues that he "lost all trust in his trial counsel and felt like he was being deprived of the ability to present a defense." During a break on the first day of trial—while defense counsel was crossing the State's second witness—Webb explained to the court that he was "very concerned" about counsel's cross-examination: "I had a lot of questions for cross-examination that were specific to the deputy and didn't feel they were being addressed." Webb was also concerned that his attorney had not pointed out that "the wounds on Mr. Horton are on the opposite side of his face from the hand I throw the punch with." And he was upset that the video showing the altercation between Sheridan and Meranda was not admitted into evidence. In sum, Webb told the court: "I feel like I'm just getting slaughtered out there and I'm not being represented correctly to defend myself."

The district court addressed each of those issues, as did defense counsel. The court pointed out that counsel had questioned the deputy "about which side the injuries were on in relation to the punch" and while "that may not have been explored as fully" as Webb wanted, "there are certain strategic considerations that attorneys have as far as questions they

---

[3] The State argues that error was not preserved because "Webb never made a formal motion" but instead just "discussed concerns about counsel." "Despite the lack of a formal motion, this court will liberally construe statements and writings made by a defendant when they intend to request substitute counsel." *State v. Corron*, No. 23-2029, 2025 WL 548374, at *1 n.1 (Iowa Ct. App. Feb. 19, 2025). We accordingly reject the State's error-preservation argument and proceed to the merits.

make and then how they try to decide to argue that evidence to the jury at a later time, sometimes in a closing argument or summation, and where they put emphasis on that." With respect to the video, the court noted that counsel had offered it into evidence but the court had ruled that only part of it was admissible: "And it's not because [defense counsel] didn't ask for it. It's because the court has legal foundations or reasons for ruling that way." The court also told Webb that "strategy and timing play a key role" with many of the concerns Webb raised and that it was counsel's job "to tell your story in the manner that's most effective."

As Webb recognizes, "general frustration and dissatisfaction with defense counsel" is insufficient cause for substitution of counsel. *State v. Boggs*, 741 N.W.2d 492, 506 (Iowa 2007). "[A] defendant has no right to an attorney who will docilely do as . . . told or to a 'meaningful relationship' with appointed counsel." *United States v. Barrow*, 287 F.3d 733, 738 (8th Cir. 2002) (internal citations omitted). This record does not show an irreconcilable conflict but Webb's general frustration with adverse elements of the trial—a matter that "naturally attends this type of proceeding and the circumstances" Webb was in. *State v. Jefferson*, 574 N.W.2d 268, 279 (Iowa 1997).

Webb argues the same concerns show a complete breakdown in communication. He contends that because he was "scared and confused" about counsel's trial strategy, he established that "counsel had minimally communicated with Webb and had not involved him in the preparation of the case they would present at trial." But defense counsel explained that he and Webb had extensive discussions about the video evidence—which was Webb's main complaint—and when it should come in. And the court informed Webb that based "on the record already made, while it might not

8

be as much as you want, he appears to be setting the stage for certain arguments that support what you want to get out there." Webb seemed reassured, responding: "Fair enough."

Under this record, we find that Webb failed to prove a complete breakdown in communication. To meet that burden, Webb needed to "put forth evidence of a severe and pervasive conflict with his attorney or evidence that he had such minimal contact with the attorney that meaningful communication was not possible." *State v. Tejeda*, 677 N.W.2d 744, 752 (Iowa 2004) (citation omitted). Webb's complaints do not rise to that level. Instead, they "suggest more generally a distaste for his attorney's methods than a real communication issue." *State v. Hagenow*, No. 22-1958, 2024 WL 2042137, at *9 (Iowa Ct. App. May 8, 2024). We accordingly find no abuse of discretion in the court's handling of Webb's concerns about his attorney, especially considering its timing in the middle of the trial.[4] *See Jefferson*, 574 N.W.2d at 270 (noting that "[d]isruption to the trial process" is a valid factor for the trial court to consider).

### C. Motion for New Trial

Finally, Webb challenges the denial of his motion for new trial, arguing that the jury's verdict was contrary to the weight of the evidence. *See* Iowa R. Crim. P. 2.24(2)(b)(7). A verdict is contrary to the weight of the evidence when "a greater amount of credible evidence supports one side of an issue or cause than the other." *State v. Shanahan*, 712 N.W.2d 121, 135 (Iowa

---

[4] Since we have determined that Webb failed to establish either an irreconcilable conflict or complete breakdown in communication, we do not address the separate prejudice inquiry. *See State v. Brooks*, 540 N.W.2d 270, 272 (Iowa 1995) (noting that to succeed on a challenge to the denial of substitute counsel, "[a] defendant must ordinarily show prejudice, unless . . . counsel has a conflict of interest").

2006) (cleaned up). "A district court should only grant a motion for new trial in the extraordinary case in which the evidence preponderates heavily against the verdict rendered." *State v. Benson*, 919 N.W.2d 237, 243 (Iowa 2018) (cleaned up). This is not such a case.

Meranda testified that Webb knocked her unconscious, and Dillon testified that when he ran into the garage, he saw Webb standing over her. Neither Meranda nor Dillon had any injuries before the encounter, but afterward, a responding deputy observed a "goose egg" on Meranda's head, "consistent with some type of physical assault." The video exhibit offered by the State shows Sheridan and Webb behind a parked vehicle in the garage when Dillon runs in. Meranda cannot be seen—consistent with her testimony that she was on the ground.

Webb contends that his testimony was more credible than the testimony from the Hortons and was corroborated by Sheridan, who testified that she did not see Webb touch Meranda during the altercation. He also points to alleged discrepancies—such as whether Meranda's hair clip was broken or whether she could have stood up seconds after being knocked unconscious —but these minor details do not outweigh the physical injuries observed by witnesses and law enforcement.

To be sure, this is not a case in which the evidence overwhelmingly favors one side. But it's also not a case in which "a greater amount of credible evidence" supports Webb's version of events. *Shanahan*, 712 N.W.2d at 135. Because the evidence was "such that different minds could arrive at different conclusions," the district court did not abuse its discretion

in declining to disturb the jury's findings and denying Webb's motion for new trial. *Id.*

**AFFIRMED.**