# IN THE COURT OF APPEALS OF IOWA

No. 22-1968
Filed December 18, 2024

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**BRYAN O'NEIL WATKINS,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Black Hawk County, David P.

Odekirk, Judge.


        A defendant appeals his convictions for two counts of assault causing bodily

injury, second-degree sexual abuse, and willful injury causing serious injury as a

habitual offender. **AFFIRMED IN PART, REVERSED IN PART, AND**

**REMANDED.**


        Gary Dickey of Dickey, Campbell, & Sahag Law Firm, PLC, Des Moines, for

appellant.

        Brenna Bird, Attorney General, and Joseph D. Ferrentino, Assistant

Attorney General, for appellee.


        Considered by Badding, P.J., Langholz, J., and Danilson, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2024).

**DANILSON, Senior Judge.**

Criminal charges were filed against Bryan Watkins upon claims he brutally attacked his then paramour over the course of several hours.[1] The State's amended trial information charged Watkins with assault domestic abuse by strangulation causing bodily injury (count I), second-degree sexual abuse (count II), willful injury causing serious injury (count III), and assault domestic abuse causing serious injury (count IV). Following a jury trial wherein Watkins represented himself, the district court entered judgment and sentence against Watkins as follows: count I—assault causing bodily injury as a lesser-included offense; count II—sexual abuse in the second degree; count III—willful injury causing serious injury as a habitual offender; and count IV—assault causing bodily injury as a lesser-included offense.

Watkins raises three claims on appeal, (1) his waiver of trial counsel was not knowing, intelligent, and voluntary; (2) his convictions should have merged; and (3) count III should not be enhanced by the habitual-offender enhancement. Following our review of the record, we affirm in part, reverse in part, and remand for entry of a corrected sentencing order.

## I.     *Waiver of Trial Counsel*

We begin with Watkins's claim that he did not knowingly, intentionally, and voluntarily waive is right to trial counsel. As this claim is rooted in the U.S. Constitution, our review is de novo. *State v. Johnson*, 756 N.W.2d 682, 686 (Iowa 2008). "The Sixth Amendment safeguards to an accused who faces incarceration

---

[1] We do not detail the underlying facts that gave rise to Watkins's convictions as they are not relevant to Watkins's appellate challenges.

the right to counsel at all critical stages of the criminal process." *Iowa v. Tovar*, 541 U.S. 77, 80–81 (2004). It also guarantees a defendant the right to self-representation. *Farretta v. California*, 422 U.S. 806, 807 (1975). The constitutional right to counsel is effective until waived by a defendant. *Hannon v. State*, 732 N.W.2d 45, 52 (Iowa 2007). "In other words, before the right to self-representation attaches, defendants must elect to proceed without counsel by a knowing, intelligent, and voluntary waiver of their right to counsel." *State v. Jones*, No. 19-0494, 2020 WL 3264377, at *3 (Iowa Ct. App. June 17, 2020) (citing *Faretta*, 422 U.S. 835–36).

The waiver of the right to counsel "must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understand of the whole matter." *State v. Cooley*, 608 N.W.2d 9, 15 (Iowa 2000) (quoting *Von Moltke v. Gillies*, 332 U.S. 708, 724 (1948)). Such is necessary to ensure that the waiver is knowing. *Id.* The defendant must also be "admonished as to the usefulness of an attorney at that particular proceeding and made cognizant of the danger in continuing without counsel." *Id.* A waiver that does not meet these criteria cannot be considered voluntary and intelligent. *See id.*

To ensure that a defendant has such understanding, the district court should engage in an extensive colloquy. Our supreme court has endorsed the colloquy outlined in *Spencer v. Ault*, 941 F. Supp. 832, 843–44 (N.D. Iowa 1996), to ensure a defendant wishing to represent themselves appreciates the impact of their waiver

of the right to counsel.  *State v. Martin*, 608 N.W.2d 445, 450 (Iowa 2000).  That model colloquy includes the following questions:

> (a) Have you ever studied law?
> (b) Have you ever represented yourself or any other defendant in a criminal action?
> (c) You realize, do you not, that you are charged with these crimes: (Here state the crimes with which the defendant is charged.)
> (d) You realize, do you not, that if you are found guilty of the crime charged in Count I the court . . . could sentence you to as much as __ years in prison and fine you as much as $__? (Then ask him a similar question with respect to each other crime with which he may be charged in the indictment or information.)
> (e) You realize, do you not, that if you are found guilty of more than one of those crimes this court can order that the sentences be served consecutively, that is, one after another?
> (f) You realize, do you not, that if you represent yourself, you are on your own?  I cannot tell you how you should try your case or even advise you as to how to try your case.
> (g) Are you familiar with the [Iowa] Rules of Evidence?
> (h) You realize, do you not, that the [Iowa] Rules of Evidence govern what evidence may or may not be introduced at trial and, in representing yourself, you must abide by those rules?
> (i) Are you familiar with the [Iowa] Rules of Criminal Procedure?
> (j) You realize, do you not, that those rules govern the way in which a criminal action is tried in federal court?
> (k) You realize, do you not, that if you decide to take the witness stand, you must present your testimony by asking questions of yourself?  You cannot just take the stand and tell your story.  You must proceed question by question through your testimony.
> (l ) (Then say to the defendant something to this effect): I must advise you that in my opinion you would be far better defended by a trained lawyer than you can be by yourself.  I think it is unwise of you to try to represent yourself.  You are not familiar with the law.  You are not familiar with court procedure.  You are not familiar with the rules of evidence.  I would strongly urge you not to try to represent yourself.
> (m) Now, in light of the penalty that you might suffer if you are found guilty and in light of all of the difficulties of representing yourself, is it still your desire to represent yourself and to give up your right to be represented by a lawyer?
> (n) Is your decision entirely voluntary on your part?
> (o) If the answers to the two preceding questions are in the affirmative, you should then say something to the following effect: "I

find that the defendant has knowingly and voluntarily waived his right to counsel.  I will therefore permit him to represent himself."

(p) You should consider the appointment of standby counsel to assist the defendant and to replace him if the court should determine during trial that the defendant can no longer be permitted to represent himself.

*Spencer*, 941 F. Supp. at 843–44 (quoting 1 Bench Book for United States District Judges 1.02-2 to-5 (3d ed. 1986)).

Here, the district court engaged in the following colloquy with Watkins:

COURT: Okay.  As we go through today's hearing, Mr. Watkins, I'm going to be asking you some questions and also advise you about some rights that you have.  If at any point in time you have any questions about anything we're discussing, please let me know that, I'll give you whatever time you wish to speak to [defense counsel].  Okay?

DEFENDANT: Okay.

COURT: And I just ask that you talk up a little bit.  You're a little soft spoken, and I just want to make sure our court reporter hears everything you say.  All right?

DEFENDANT: Yes, sir.

COURT: I do want to note that you're charged by trial information that was filed November 8th, 2021, with four counts: count I, assault domestic abuse, strangulation, causing bodily injury, second offender as a habitual offender.  That is a class "D" felony, in violation of Iowa Code section[s] 708.2A(5) and 902.8 [(2021)].  Count II, sexual abuse second degree, as an habitual offender.  That is a class "B" felony, in violation of Iowa Code section 709.3(1)(a).  Count III, willful injury causing serious injury, as a habitual offender, a class "C" felony, in violation of Iowa Code sections 708.4(1) and 902.8.  In Count IV, assault domestic abuse causing bodily injury, second offender, a class "D" felony, in violation of Iowa Code section 708.2A(5).  Do you understand the charges as I've read them to you?

DEFENDANT: Yes, sir, I do.

COURT: Okay. And have you had a chance to discuss those charges with [defense counsel]?

DEFENDANT: No, sir, I haven't.

COURT: [Defense counsel], have you discussed those charges with your client?

[DEFENSE COUNSEL]: We've discussed the case, so we've discussed the charges in my opinion.

COURT: Okay.  Mr. Watkins, before we go forward, I do want to advise you of your trial rights.  So those trial rights would include

the following: the right to the assistance of counsel at every stage of these proceedings, and if you could not afford one, one would be appointed to represent you. You would have the right to a speedy and public jury trial, and at that jury trial you would have the right to have the jury return a unanimous verdict. You would have the right to participate in jury selection, and the jury would consist of twelve impartial people reflecting a cross-section of our community. You would have the right to see and hear all witnesses called by the State and the right to question or cross-examine the witnesses called by the State. You would have the right to call your own witnesses and the right to use the subpoena power of the court to require or compel witnesses to appear who refuse to come in and testify.

You would have the—a right to have the State maintain the burden of proof. That means you would be presumed innocent until such time as the state could prove you guilty beyond a reasonable doubt to each and every element of the offenses you're charged with. And you would have the right against self-incrimination. That means you could not be forced to testify, and the State could not argue that you were guilty if or because you did not testify. Do you understand those trial rights?

DEFENDANT: Yes, sir.

COURT: At this time, I do want to have you tell me your full name.

DEFENDANT: Brian O'Neil Watkins.

COURT: And, Mr. Watkins, how old are you?

DEFENDANT: I'm 50 years old.

COURT: And how far did you go in school?

DEFENDANT: I went tenth grade, but I got my GED at Kirkwood Community College.

COURT: Fair to say you read, write and understand the English language?

DEFENDANT: Yes, sir.

COURT: And are you being treated by a doctor for any reason today?

DEFENDANT: No, sir.

COURT: Okay. And the reason I'm asking that is I want to make sure, is there anything that could impair your ability mentally to understand what we're discussing or to handle the case if you were to represent yourself?

DEFENDANT: I understand, sir. No, sir, I'm not.

COURT: And so I would ask, are there any medications that you're taking as we talked today?

DEFENDANT: I'm taking medications, but not that would impair me from understanding or being aware of what I'm doing here today.

COURT: Okay. In the last 24 hours have you used any drugs, legal or illegal?

DEFENDANT: Just the medication that I'm taking.

COURT: Are those prescription meds?

DEFENDANT: Yes, sir. They're tramadol, I think, for pain and some for the joint, oxy—it ain't oxy, it's joint medication this morning.

COURT: Okay.

DEFENDANT: And Tylenol.

COURT: Other than those, no other—

DEFENDANT: No, sir.

COURT: —drugs? And in the last twenty-four hours have you used any alcoholic beverage?

DEFENDANT: No, sir.

COURT: And, [defense counsel], are you aware of anything that would impair your client's ability to understand what we're discussing today?

[DEFENSE COUNSEL]: No, Your Honor.

COURT: All right. With that then, I do also need to make sure, Mr. Watkins, that you're here voluntarily and of your own free will, so I would ask, did anybody threaten you to get you to request to represent yourself?

DEFENDANT: No, sir. No threats, no.

COURT: Anybody promise you anything to make you request that?

DEFENDANT: No promises.

COURT: Okay. And whose decision is it today to make the request to represent yourself?

DEFENDANT: It's my decision, sir.

COURT: And is that decision voluntary?

DEFENDANT: Yes, sir. Can I elaborate?

COURT: Well, I did—and here's the rub of all this. I don't want you to say more than you need to on the record, because anything you say, I just want you to understand, anything you do say on the record could be used against you either at trial or otherwise, and so that's your right against self-incrimination that I mentioned as one of your trial rights. So anything you say today could be used against you. Do you understand that?

DEFENDANT: Yes, sir.

COURT: Okay. And some of my other questions as we go through today might give you an opportunity to elaborate more if you would like, so we can take that a step at a time. With regard to each of these charges, I just want to discuss with you the potential penalties and consequences of each.

Concerning Count I, the assault domestic abuse by strangulation causing bodily injury, as a habitual offender, again, that carries with it a, on just the "D" felony, a term of imprisonment up to five years. If you are subject to the habitual offender enhancement, that could be a term of imprisonment of fifteen years with a mandatory three years. Do you understand that?

DEFENDANT: Yes, sir, I do.

COURT: And there is a fine on just the straight class "D" felony that would be applicable of seven hundred—excuse me, of $1025.00 up to a maximum of $10,245.00 with a fifteen percent surcharge.

Count II, the sexual abuse second degree, that would carry with it a term of imprisonment of not to exceed twenty-five years. It's a mandatory minimum of seventy percent of that 25-year period. In addition, you would be subject to a special sentence for life in which you would be committed to the custody of the director of the Iowa Department of Corrections for the rest of your life without eligibility for parole under Chapter 906. That's in addition to any other punishment imposed and commences upon the completion of any sentence imposed under the applicable sentencing provisions. I would also note that you would be required to register as a sex offender for the remainder of your life, that there is a $250.00 civil penalty for registering as a sex offender that you would have to pay, and a $90.00 sexual abuse surcharge that would be applicable as well.

Under Count III, that's willful injury causing serious injury, as a habitual offender. That is a class "C" felony. As such, that carries with it a term of imprisonment not to exceed ten years. The fine is a $1370.00 minimum fine up to a maximum of 13,660 plus a fifteen percent surcharge. Again, if you are subject to the habitual offender enhancement, that would be a potential maximum—or a sentence not to exceed fifteen years with a minimum three-year sentence on that as well.

With regard to Count IV, assault domestic abuse causing bodily injury, as a second offender, that is a class "D" felony. Again, that would be a term of imprisonment not to exceed five years, the minimum fine of $1025.00 up to a maximum of $10,245.00 plus a fifteen percent surcharge.

All counts would be subject to category A and B restitution. You would have to submit or provide a DNA sample for further testing by the state. You would be subject to a firearms—notice of firearms prohibition for each of those charges. As a result of pleading—or, excuse me, of having a conviction for these, you may be deprived of the following rights: the right to vote, the right to serve on a jury, the right to hold public office, the right to possess firearms and ammunition and the right to appeal your guilty plea absent a showing of good cause. In addition, if convicted on two or more of these counts, those counts could be run consecutive to one another, so each count would be one, plus one, plus one, plus one. Do you understand that?

DEFENDANT: Yes, sir, I do.

COURT: And I'm not using one in the numerical sense, but each one could be added to the other?

DEFENDANT: Yes, sir, I do.

COURT: Okay. Any penalties or consequences I've neglected as to any of these four counts? [Prosecutor]?

[PROSECUTOR]: No, Your Honor.

COURT: [Defense counsel]?

[DEFENSE COUNSEL]: Not that I'm aware of, Judge.

COURT: Okay. Mr. Watkins, I do want to ask, have you ever studied law?

DEFENDANT: No, sir.

COURT: And have you ever represented yourself or any other defendant in a criminal action?

DEFENDANT: No, sir, I haven't.

COURT: And you understand the charges as I've stated them to you, correct?

DEFENDANT: Yes, sir, I do.

COURT: And you also understand the penalties and consequences that we've discussed?

DEFENDANT: Yes, sir.

COURT: Do you realize then that if you are—that if you represent yourself, you're on your own essentially?

DEFENDANT: Yes, sir.

COURT: Okay.

DEFENDANT: I'm on my own anyway.

COURT: Well—and I can't tell you how to try your case, I can't give you advice, me or any other judge during the course of this. Do you understand that?

DEFENDANT: Yes, sir.

COURT: Okay. And do you understand—or, I guess, what I would ask you, are you familiar with the Rules of Evidence?

DEFENDANT: Yes, sir. I've had an opportunity the last couple of days to take a look at them.

COURT: Okay. And do you understand that the Rules of Evidence govern what evidence may or may not be introduced at trial, and if you represent yourself, you have to abide by those rules?

DEFENDANT: Yes, sir.

COURT: Further, are you familiar with the Iowa Rules of Criminal Procedure?

DEFENDANT: Yes, sir.

COURT: The same question I had asked, are you aware that those Rules of Criminal Procedure do govern the way in which criminal matters are tried in the state of Iowa?

DEFENDANT: Yes, sir.

COURT: And that you would have to abide by those rules just as the attorneys would have to?

DEFENDANT: Yes, sir.

COURT: Further, do you realize that if you would choose to take the witness stand and testify on your own behalf at trial that you

would have to proceed by asking yourself questions and then answering those questions? Do you understand that?

DEFENDANT: Yes, sir.

COURT: And there could be—that could be somewhat uncomfortable for you to do that, and it can be somewhat disjointed perhaps for the jury to hear the evidence or your testimony come in on that basis. Do you understand that?

DEFENDANT: Yes, sir.

COURT: All right. In other words, you can't just take the stand and tell your story. You have to—do you understand that?

DEFENDANT: Yeah, Me, Myself and Irene.

COURT: Right, kind of.

DEFENDANT: The movie.

COURT: You can't do that. You have to—it's question-answer, question-answer, and it can, again, be disjointed, and it's very important that you understand that, as I think I indicated at the outset, but I want to make sure you understand the—all the rules that the attorneys are expected to comply with, you have to comply with.

DEFENDANT: Yes, sir.

COURT: And I can't give you any leeway just because you're representing yourself, I have to apply the rules even-handedly in the case whether or not you have an attorney.

DEFENDANT: Right.

COURT: Okay. With that, I would say that it's my advice to you and my opinion that you would be far better defended by a trained lawyer in this case, far better than you can do on your own. I think it's unwise for you to try to represent yourself, and that's because there is no way you can be as familiar with the law as a trained lawyer or familiar with the rules of procedure and evidence as a trained lawyer, so I would strongly urge you not to try to represent yourself, and that's not because I don't think you're smart, articulate, capable, it's just there's a lot to know about the law and the rules of procedure and evidence that as somebody who has not been trained, very difficult for you to obtain the same level of knowledge to competently represent yourself as a trained lawyer would hopefully have, and so in my opinion you will be at a significant disadvantage. That's why I'm telling you this. So do you understand that?

DEFENDANT: I do understand, Your Honor.

COURT: In light of then the penalties we've discussed and all of the downsides of representing yourself that we've discussed, is it still your desire to represent yourself and to give up your right to be represented by a lawyer?

DEFENDANT: Yes, sir, I do.

COURT: And, again, that decision is voluntary?

DEFENDANT: Yes, sir.

COURT: What I would at this time state then, I do find that you have knowingly, intelligently and voluntarily waived your right to counsel. I therefore will permit you to represent yourself at trial. I would suggest that you consider the appointment of standby counsel to assist you, and if—and to potentially step in at trial if the court would determine you can no longer represent yourself for any reason. And so at this point I am going to appoint [defense counsel] as standby counsel. It doesn't mean—you're still representing— you're still going to be representing yourself, he will just be sitting there in case you have a question to ask or something comes up during trial.

Despite this lengthy colloquy, which hits on all the key points of the model colloquy, Watkins contends this exchange was insufficient to establish that he knowingly, intelligently, and voluntarily waived his right to counsel. Specifically, Watkins points to his educational level, the fact that he never previously represented himself, and the fact that the court did not inquire as to whether he had been through another trial or previously observed a criminal trial. He also complains that the district court did not sufficiently assess his understanding of the Iowa Rules of Criminal Procedure and Iowa Rules of Evidence, noting different instances in the proceedings when he appeared to not be well-versed in the rules.

Ideally, the district court would have further inquired as to Watkins's experience and understanding of the legal process after learning of his educational level and lack of prior experience representing himself. And ideally the court would ask more probing questions regarding Watkins's understanding of our rules of evidence and criminal procedure. But that does not mean the colloquy was deficient and that Watkins's waiver was not knowing, intelligent, and voluntary. The colloquy addressed all necessary issues, and Watkins responded appropriately to each inquiry, making it apparent that he appreciated the significance of waiving his right to counsel.

In fact, Watkins has not identified any significant difficulties he experienced during the trial. Certainly, he did not perform as adeptly as a licensed attorney would have performed, but that is to be expected given his inexperience. The district court warned him of that likely reality, yet Watkins was steadfast in his determination to represent himself. While we recognize that Watkins had some initial confusion about how to file pre-trial motions and striking a juror for cause, he performed reasonably well many other times. He successfully struck a second juror for cause, gave adequate opening and closing statements, cross-examined witnesses, and testified on his own behalf using the difficult and awkward process of asking himself questions and then answering those questions as required by the district court.

Following our de novo review of the record, we conclude that, although Watkins may now regret waiving his right to counsel, his waiver was knowing, intelligent, and voluntary.

## II.    Merger

We move on to Watkins's next claim that the district court imposed an illegal sentence because his convictions should have merged. He claims his convictions on counts I and IV must merge as should counts II and III. We "review claims of an illegal sentence involving merger for the correction of errors at law." *State v. Brown*, 996 N.W.2d 691, 696 (Iowa 2023). Iowa Code section 701.9 states that "[n]o person shall be convicted of a public offense which is necessarily included in another offense of which the person is convicted"—codifying "the double jeopardy protection against multiple punishments for the same offense." *State v. Brown*, 996 N.W.2d 691, 696 (Iowa 2023). "The legislature defines the offenses and can

provide for multiple punishments for separate offenses that apply to the same conduct." *Id.* at 697 (quoting *State v. Johnson*, 950 N.W.2d 21, 24 (Iowa 2020)). When the legislature intends for multiple punishments, the defendant's convictions do not merge. *Id.*

With respect to counts I and IV, Watkins was convicted of a lesser-included offense under both counts resulting in his conviction of two counts of the same offense—assault causing bodily injury. However, the jury instructions did not require the jury complete any fact finding of two separate assaults to permit Watkins's conviction for two separate counts of assault causing bodily injury. *See State v. Love*, 858 N.W.2d 721, 724 (Iowa 2015) (recognizing convictions that would otherwise merge do not when the jury makes a fact finding that the defendant committed separate acts for each conviction); *State v. Velez*, 829 N.W.2d 572, 577 (Iowa 2013) (recognizing that when a defendant is convicted of two counts of the same offense the question is whether the defendant committed two separate acts that would constitute that offense). In the absence of any specific jury finding that Watkins completed to separate acts constituting assault causing bodily injury, his convictions under counts I and IV merge.[2] The district court erred by failing to merge the two counts.

With respect to counts II and III, Watkins was convicted of second-degree sexual abuse and willful injury causing serious injury as a habitual offender. He

---

[2] We understand the State's argument that the evidence presented at trial could permit the jury to find Watkins complete two separate assaults on the victim. However, there was no specific finding of separate assaults made by the jury. And the fact that during closing arguments, the State delineated the distinction between the assault in count I and count IV does not satisfy the requirement of a jury finding or verdict.

claims "under the circumstances of this case" these offenses merge. He concedes that willful injury causing serious injury is not a lesser-included offense of second-degree sexual abuse under the *Blockburger* test,[3] also known as the legal-elements test, which "compares 'the elements of the two offenses to determine whether it is possible to commit the greater offense without also committing the lesser offense.'"[4] *See State v. Johnson*, 950 N.W.2d at 24 (quoting *State v. Halliburton*, 539 N.W.2d 339, 344 (Iowa 1995)).

Watkins recognizes that the failure to meet the *Blockburger* test is not dispositive to his claim. "[W]e must also determine 'whether the legislature intended multiple punishments for both offenses.'" *Brown*, 996 N.W.2d at 699 (quoting *Halliburton*, 539 N.W.2d at 344). "We are obliged to indulge the presumption that in the absence of a clear indication of contrary legislative intent the legislature ordinarily does not intend cumulative punishment." *Id.* (cleaned up). But we recognize that "if one offense is not an included offense within the other, there is a presumption that multiple punishments can be assessed." *Id.* (cleaned up).

We look to the available punishments for the two offenses to help discern legislative intent—specifically whether the greater offense carries "a penalty that is

---

[3] *Blockburger v. United States*, 284 U.S. 299, 304 (1932).

[4] Despite conceding that "willful injury is not a lesser included of second-degree sex abuse under the *Blockburger* test," Watkins goes on to claim that "a defendant such as Watkins cannot be convicted of both second-degree sex abuse and willful injury" and compares their elements. The State succinctly notes that the offenses have distinct elements. Specifically, second-degree sexual abuse requires a sex act while willful injury causing serious injury requires an apparent-ability element and specific intent to cause serious injury, which are not elements of second-degree sexual abuse. So Watkins cannot prove merger by comparison of the offenses' elements.

not in excess of the" other offense and "whether the sentence for the lesser offense can be enhanced by prior convictions for the same offense," as these are indicia that the legislature intended for multiple punishments. *Id.* And we also "examine the dangers the legislature intended to prevent when enacting the statutes at issue." *Id.*

Watkins emphasizes that the punishment for second-degree sexual abuse, twenty-five years in prison with a seventy-percent mandatory minimum, Iowa Code §§ 709.3(1)(a), 902.12(1)(c), is more severe than the ten-year sentence for willful injury causing serious injury, *id.* §§ 708.4(1), 902.9(1)(d). This disparity in sentences works in favor of Watkins's merger argument. *See Brown*, 996 N.W.2d at 699–700. And Watkins contends that the two offenses target similar behavior by prohibiting assaultive behavior. Watkins reasons these facts taken together should result in his two convictions merging.

We disagree. While both offenses target assaultive behavior, the assaultive behavior they target is distinct. Second-degree sexual abuse, as marshaled in this case, required Watkins to perform a nonconsensual sex act on the victim while using or threatening to use force creating a substantial risk of death or serious injury to any person. While willful injury causing serious injury, as marshaled in this case, required Watkins to specifically intend to cause a serious injury to the victim and actually cause a serious injury to the victim. These are distinct evils targeted by the legislature. Moreover, the purported lesser offense, willful injury causing serious injury, is subject to an enhancement for subsequent convictions, as demonstrated by Wakins's own conviction that was enhanced as a habitual offender. So merging the willful-injury-causing-serious-injury conviction into the

second-degree-sexual-abuse conviction would eliminate future habitual-offender enhancements and frustrate the legislature's intent to enhance future convictions. *See id.* at 699; *Johnson*, 950 N.W.2d at 25–26.

As a result, we cannot find any unintended sentencing consequences or inconsistency with legislative intent to require merger of counts II and III. The district court did not err when it did not merge these two counts.

### III.    *Habitual-Offender Enhancement*

Finally, we address Watkins's challenge to application of the habitual-offender enhancement to count III, his willful-injury-causing-serious-injury conviction. But first, some background. The original trial information sought application of the habitual-offender enhancement to counts I through III. A "supplemental trial information" was filed at the same time, which did not make reference to the habitual-offender enhancement on any count. The order for arraignment stated that a trial information had been filed seeking the habitual-offender enhancement on counts II and III. Later, the State filed an amended supplemental trial information that did not reference the habitual-offender enhancement.

After the jury began deliberations, the prosecutor inquired as to whether Watkins would stipulate to his prior offenses for the purposes of the habitual-offender enhancement or wanted the matter tried to a jury should he be convicted on the pending charges. Watkins responded that he "wish[ed] to be heard by a jury for the enhancements." Following the return of the jury's verdicts, the court noted it would set "a trial date on the enhancements." A little more than two weeks later, the parties reconvened for a trial on the habitual-offender enhancement to

determine whether Watkins had been previously convicted of the felonies alleged by the State.  However, instead of proceeding to trial, Watkins admitted he had been previously convicted of the felonies.  The district court confirmed with Watkins that by admitting to the prior felonies that the habitual-offender enhancement would apply to his conviction for willful injury causing serious injury resulting in an enhanced sentence of fifteen years with a minimum of three years.

Now on appeal, Watkins challenges the application of the habitual-offender enhancement to count III because it was not referenced in the amended supplemental trial information, failing to comply with Iowa Rules of Criminal Procedure 2.6 and 2.19.  Upon our review, we conclude the State was following the procedure in rule 2.6(5) that was in effect at the time of Watkins's trial when it filed the original trial information on November 8, 2021, with the habitual-offender enhancements, followed by the supplemental trial information on the same date without the enhancements.  *See* Iowa R. Crim. P. 2.6(5) ("If the offense charged is one for which the defendant, if convicted, will be subject by reason of the Code to an increased penalty because of prior convictions, the allegation of such convictions, if any, shall be contained in the indictment.  A supplemental indictment shall be prepared for the purpose of trial of the facts of the current offense only, and shall satisfy all pertinent requirements of the Code, except that it shall make no mention, directly or indirectly, of the allegation of the prior convictions, and shall be the only indictment read or otherwise presented to the jury prior to conviction of the current offense.").  We conclude the amendment that followed on February 2, 2022, was only amending the supplemental trial information, not the original trial information, since it was captioned, "Amended Supplemental Trial Information."

This was all permissible under the version of rule 2.6(5) that was in effect at the time. *See State v. Oetken*, 613 N.W.2d 679, 686–87 (Iowa 2000) (approving this procedure and rejecting the defendant's argument that the substituted trial information without the habitual-offender enhancement replaced the one previously filed); *see also State v Bruegger*, 773 N.W.2d 862, 869–70 (Iowa 2009) (concluding a "supplemental information" was simply designed to comply with rule 2.6(5)). Watkins's argument to the contrary appears to be premised entirely on the new version of rule 2.6(5), which did not go into effect until July 1, 2023.[5]

## IV.     Conclusion

Watkins's waiver of trial counsel was knowing, intelligent, and voluntary. There was no error, nor was an illegal sentence imposed, by applying the habitual-offender enhancement. Counts II and III do not merge. However, counts I and IV do merge. We remand to the district court for entry of a corrected sentencing order sentencing Watkins to one count of second-degree sexual abuse, one count of willful injury causing serious injury as a habitual offender, and one count of assault causing bodily injury.

Finally, this is the last opinion I expect to author after serving the people of the State of Iowa for nearly forty-four years in the Iowa Judicial Branch. It's been a tremendous honor for the opportunity to serve in nine different judicial positions during that time. Yet tomorrow may never come, so it is time to hang up the robe,

---

[5] It is also questionable whether Watkins is really claiming an illegal sentence, but the supreme court has held that similar challenges can be brought for the first time on appeal as a challenge to the court's subject matter jurisdiction. *See Bruegger*, 773 N.W.2d at 871.

lay down the gavel, and adjourn this career.  I sincerely thank everyone who has provided me with assistance over the years.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**